In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-3557

AKIDA BERRY,

*Plaintiff-Appellant*,

*v.*

LT. GEORGE PETERMAN, R.N. DAVE REICH, AND
KAREN BUTLER, M.D.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 08-CV-0421—**J.P. Stadtmueller**, *Judge.*

SUBMITTED MARCH 17, 2010—DECIDED MAY 5, 2010

Before POSNER, MANION, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.*  In the spring of 2008, plaintiff Akida Berry, an inmate in the Wisconsin Department of Corrections, was transferred temporarily to the Waushara County Jail because of overcrowding. Berry developed a serious toothache. The nurse and the doctor at the jail told him to take over-the-counter pain relievers, but they refused to refer him to a dentist. After

about two months of serious pain, Berry was returned to a state facility where he promptly saw a dentist who performed a root canal the same day.

Berry, proceeding without a lawyer, sued the nurse, the doctor, and the jail administrator under 42 U.S.C. § 1983 for violating his Eighth Amendment right not to be subjected to cruel and unusual punishment. The defendants moved for summary judgment, arguing (1) that Berry failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a); (2) that Berry did not suffer a serious medical condition; and (3) that even if Berry did suffer a serious medical condition, he could not prove that any defendant acted with deliberate indifference toward that condition. The district court disagreed with the defendants on the first two points but agreed on the third and thus granted summary judgment to all three defendants. *Berry v. Peterman*, 2009 WL 3061977 (E.D. Wis. Sept. 23, 2009).

We affirm in part and reverse in part. We agree with the district court that Berry has raised a genuine issue of material fact as to whether he exhausted his administrative remedies. We also agree that Berry suffered a serious medical condition and that the jail administrator is entitled to summary judgment because he was not deliberately indifferent to Berry's situation. As a layperson, the administrator was entitled to rely on the doctor's and nurse's advice regarding Berry's dental pain. But we conclude that Berry has offered sufficient evidence from which a reasonable jury could infer that the doctor and nurse acted with deliberate indifference

toward his condition by persisting in an easy but ineffective course of treatment that subjected him to two months of serious but avoidable pain. We remand those claims for trial.

*The Facts for Summary Judgment*

This case comes before us on review of a grant of summary judgment, so we must give plaintiff Berry the benefit of all conflicts in the evidence and all reasonable and favorable inferences that might be drawn from the evidence. See *Johnson v. Snyder*, 444 F.3d 579, 583 (7th Cir. 2006); *Betaco, Inc. v. Cessna Aircraft Co.*, 32 F.3d 1126, 1132 (7th Cir. 1994). We do not vouch for the objective truth of every detail of the following account or take any position as to Berry's ultimate chance of success on the merits.

Berry was confined at the Waushara County Jail for approximately ten weeks—from March 28, 2008, through June 6, 2008—due to overcrowding at Wisconsin's Department of Corrections ("DOC") facilities. Approximately one month before his transfer to Waushara, Berry had a DOC dental exam and was classified as " level 20," meaning that he had routine or chronic dental needs and appeared unlikely to suffer an acute dental episode in the next six months.

During his detention at the Waushara County Jail, Berry filed numerous complaints concerning a steadily-worsening toothache. As early as April 3rd, Berry asked to see a dentist about an ailing tooth, claiming that air, water, and food all caused him pain. On April 11th, Berry filed a

complaint stating that he did not believe he could wait until his transfer back to a DOC facility to see a dentist. He wrote that nothing was helping his tooth and that he was "having constant pains [and] headaches." On April 13th, Berry again asked to see a dentist and complained that his tooth caused him continuous pain, headaches, and problems eating and sleeping. Again on April 18th, Berry complained that his tooth was causing him "a great deal of pain, and the worst headache I've ever had," and that he was "unable to drink water at times, or brush my teeth due to the [pain]." On April 21st, Berry asked his nurse whether he could be sent to an off-site dentist to address his increasing pain, and he complained that his pain medication was ineffective. Berry complained again on April 24th that he was in such pain that he had to chew food on only one side of his mouth, and he noted that the pain had affected his sleeping and eating. On April 29th, Berry complained that he had not been able to brush his teeth because cold water caused him intolerable pain. A few days later, on May 1st, Berry complained to the jail administrator that he needed to see a dentist. Berry filed this lawsuit on May 14th. He complained to the jail administrator again on May 18th, stating that he needed to see a dentist and that his requests had been ignored.

Defendant Dave Reich—a registered nurse working for Health Professionals, Ltd., which contracted to provide medical and nursing services at the Waushara County Jail—received and replied to most of Berry's complaints. In response to Berry's numerous requests to see a dentist, Nurse Reich regularly responded that

Waushara did not have a dentist on staff, that the Waushara County Jail's medical staff could treat only pain or infections, and that any dental work would be performed when Berry was transferred back to a DOC facility. At times Nurse Reich changed Berry's treatment or made suggestions to alleviate his pain, but he often merely reminded Berry that he had upcoming doctor appointments and that he was already receiving pain treatment (over-the-counter pain relievers). Other times, Nurse Reich simply replied that Berry's complaints had already been addressed.

Defendant Karen Butler, a physician also working for Health Professionals, examined Berry twice during his time at the Waushara County Jail. The record contains no evidence that Dr. Butler x-rayed Berry's teeth nor any details as to the methods used to examine Berry's teeth on either visit. On the limited record, it appears that Dr. Butler examined Berry only for infections or "dental emergencies." During her examination on April 17, 2008, Dr. Butler noted no such infections or emergencies. On April 24th, Dr. Butler examined Berry again, this time noting a filling in tooth No. 19 but nothing that would cause pain. On this second visit, Berry insisted on seeing a dentist. Dr. Butler refused to make a referral, apparently because Berry presented with nothing more urgent than unexplained severe pain. Instead, she recommended a different pain medication. Dr. Butler persisted in this course of treatment even after Berry complained that those medications were ineffective. She never contacted a dentist to examine Berry's teeth.

Defendant George Peterman, Waushara County's jail administrator, had limited contact with Berry, who addressed only three complaints to him. Peterman replied to the second complaint and told Berry that he had raised his concerns with the medical staff. At Berry's request, Peterman later looked at Berry's teeth himself. Not surprisingly, he told Berry that he was not qualified to diagnose or treat dental problems. In response to the third complaint, in which Berry requested to see a dentist, Peterman forwarded Berry's request to the medical staff and notified the DOC of Berry's complaints.

Berry was transferred from the Waushara County Jail to a DOC facility on June 6th and had a "priority" appointment with a dentist on June 12th. According to his chart, Berry complained of pain in tooth No. 19 when he ate, when he brushed his teeth with cold water, and at night. The dentist's exam revealed that the pulp in tooth No. 19 was "clearly necrotic," and the dentist performed a root canal or pulpotomy—surgical removal of a portion of the tooth's pulp (the connective tissue within, containing blood vessels and nerve tissue)—to salvage the remaining pulp. The dentist's notes indicate that if Berry's pain had not subsided after the root canal, the tooth would have to have been removed.

The district court granted summary judgment for all three defendants, concluding that Berry's dental pain was objectively serious but that none of the defendants had been deliberately indifferent to his condition. The court explained that Peterman and Nurse Reich properly deferred to the medical assessments made by

Dr. Butler, who treated Berry's pain and examined him twice but saw no indication of infection or other dental emergency.

*Analysis*

The Eighth Amendment to the United States Constitution protects prisoners from being subjected to cruel and unusual punishment. This amendment, incorporated to apply to the states pursuant to the Fourteenth Amendment, includes a right to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006). Pursuant to 42 U.S.C. § 1983, a prisoner may bring suit against any person who caused a violation of the prisoner's Eighth Amendment rights while acting under color of state law.

Berry asserts that his Eighth Amendment rights were violated because the defendants showed deliberate indifference to his repeated complaints of severe dental pain. To succeed on this claim, Berry must show (1) that he suffered from an objectively serious medical condition; and (2) that the individual defendant was deliberately indifferent to that condition. *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006), citing *Zentmyer v. Kendall County*, 220 F.3d 805, 810 (7th Cir. 2000).

On the first element, the district court correctly concluded that Berry had come forward with sufficient evidence of an objectively serious medical condition. Berry offered ample evidence that he suffered from tooth decay and serious pain while at the Waushara Jail—his

tooth's pulp was "clearly necrotic," according to the dental records, requiring an immediate root canal when Berry was finally seen by a dentist shortly after leaving Waushara and returning to a DOC facility. Tooth decay can constitute an objectively serious medical condition because of pain and the risk of infection. *Board v. Farnham*, 394 F.3d 469, 480-81 & n.4, 482-83 (7th Cir. 2005); *Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000) (tooth cavity presented serious medical condition).[1]

Though the district court agreed that Berry suffered from an objectively serious medical condition, it concluded that none of the defendants acted with deliberate indifference to that condition. Deliberate indifference occurs when a defendant realizes that a substantial risk of serious harm to the prisoner exists, but the defendant disregards that risk. See *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010), citing *Collins v. Seeman*, 462 F.3d 757, 761 (7th Cir. 2006). Deliberate indifference is intentional or reckless conduct, not mere negligence. *Gayton*, 593 F.3d at 620. Because each defendant played a different role in regard to Berry's treatment at the Waushara Jail, we address each defendant in turn.

---

[1] The defendants argue that Berry's purchases of candy and other sticky, sugary foods show that he did not actually suffer from an objectively serious condition. We agree with the district judge that this evidence only raises an issue of material fact to be resolved by a jury, not by the court on summary judgment. See *Berry*, 2009 WL 3061977, at *5-*6.

I.  *The Jail Administrator*

Berry failed to present sufficient evidence to support a reasonable jury finding that jail administrator Peterman acted with deliberate indifference. As a non-medical administrator, Peterman was entitled to defer to the judgment of jail health professionals so long as he did not ignore Berry. See *Hayes v. Snyder*, 546 F.3d 516, 527-28 (7th Cir. 2008); *Johnson v. Doughty*, 433 F.3d 1001, 1010-11 (7th Cir. 2006); *Greeno v. Daley*, 414 F.3d 645, 655-56 (7th Cir. 2005); *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). The undisputed facts show that Peterman met this standard. He consulted with the medical staff, forwarded Berry's concerns to the DOC, and timely responded to Berry's complaints. That he took no further action cannot be seen as deliberate indifference. As a practical matter, it would be unwise to require more of a non-medical staff member like Peterman. As *Hayes*, *Johnson*, *Greeno*, *Spruill*, and a host of other cases make clear, the law encourages non-medical security and administrative personnel at jails and prisons to defer to the professional medical judgments of the physicians and nurses treating the prisoners in their care without fear of liability for doing so. The district court properly granted summary judgment as to defendant Peterman.

II.  *The Jail Doctor*

Dr. Butler is not entitled to summary judgment. Neither medical malpractice nor mere disagreement with a doctor's medical judgment is enough to prove deliberate

indifference in violation of the Eighth Amendment. *See Estelle*, 429 U.S. at 106; *Estate of Cole v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996). But a prisoner also is not required to show that he was literally ignored. *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000). Although the doctor did not completely ignore plaintiff's pain, a doctor's choice of the "easier and less efficacious treatment" for an objectively serious medical condition can still amount to deliberate indifference for purposes of the Eighth Amendment. *Estelle*, 429 U.S. at 104 & n.10, citing *Williams v. Vincent*, 508 F.2d 541 (2d Cir. 1974); *Johnson v. Doughty*, 433 F.3d at 1013 (stating that "medical personnel cannot simply resort to an easier course of treatment that they know is ineffective"); *Greeno*, 414 F.3d at 655 (noting that persistence in a course of treatment "known to be ineffective" violates the Eighth Amendment). A significant delay in effective medical treatment also may support a claim of deliberate indifference, especially where the result is prolonged and unnecessary pain. *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008) (reversing summary judgment for defendants where plaintiff did not receive treatment for painful broken nose for nearly two days), citing *Gutierrez v. Peters*, 111 F.3d 1364, 1371-72 & n.6 (7th Cir. 1997) (collecting cases). Also, as we explained in *Grieveson*, a non-trivial delay in treating serious pain can be actionable even without expert medical testimony showing that the delay aggravated the underlying condition. 538 F.3d at 779, distinguishing *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996) (one-hour delay in responding to claim of injury by rape in prison did not rise to level of constitutional

violation). In this context, courts may consider the "cost of treatment alternatives [when] determining what constitutes adequate, minimum-level medical care," *Johnson*, 433 F.3d at 1013, citing *Ralston v. McGovern*, 167 F.3d 1160, 1162 (7th Cir. 1999), "but medical personnel cannot simply resort to an easier course of treatment that they know is ineffective." *Johnson*, 433 F.3d at 1013, citing *Kelley v. McGinnis*, 899 F.2d 612, 616 (7th Cir. 1990).

On the summary judgment record, a jury could reasonably conclude that Dr. Butler knowingly adhered to an easier method to treat Berry's pain that she knew was not effective. She had not identified an effective pain medication, nor could she explain Berry's pain, yet she rejected the obvious alternative of referring Berry to a dentist. A jury could find that she simply concluded that Berry could endure his pain until his transfer back to the DOC several weeks later, when Berry would be the DOC dentist's problem, not hers. It is hard to imagine that a doctor seeing a civilian patient, or a doctor in a prison having on-site dental staff, would respond in this way to persistent complaints of severe dental pain over a period of weeks, even in the absence of a "dental emergency." A basic dental examination is not "an expensive or unconventional treatment," nor is it esoteric or experimental. See *Ralston*, 167 F.3d at 1162. Such examinations are inexpensive and commonly sought immediately to address severe dental pain. Thus, Dr. Butler's refusal to permit Berry such a basic treatment option could be characterized as a "gratuitous cruelty" forbidden by the Eighth Amendment. See *id.*

Where Berry made a modest request for treatment by a dentist, Dr. Butler's "obdurate refusal to alter [Berry's] course of treatment despite his repeated reports that the medication was not working and his condition was getting worse", see *Greeno*, 414 F.3d at 654, is sufficient to defeat her motion for summary judgment.[2]

We are troubled by the evidence that Dr. Butler would not refer Berry to a dentist unless and until he presented either a "dental emergency" or infection. For a physician to wait to treat a patient until an infection occurs seems counterintuitive. Medical science has long tried to prevent infections from occurring in the first place. The record does not explain just what is included in the term "dental emergency," but such emergencies are certainly not the only serious dental conditions that demand reasonably prompt professional attention. Berry could have required emergency treatment if an infection had spread from his afflicted tooth into his bloodstream, but a doctor could not conscionably wait until that late point to finally provide effective treatment,

---

[2] The defendants make much of Berry's purchase of candy and junk food during his stay at the Waushara County Jail. This evidence might support an argument that Dr. Butler believed Berry was exaggerating his pain, but again, that argument presents at most a factual issue that must be addressed to a jury. See *Walker v. Benjamin*, 293 F.3d 1030, 1040 (7th Cir. 2002) (holding that doctor's and nurse's belief that prisoner was malingering presented jury issue, not grounds for summary judgment, where they refused to dispense prescribed pain medication).

particularly when confronted with persistent complaints of severe dental pain that was not responding to medication.

Dr. Butler's refusal to refer Berry to a dentist resulted in a substantial and unnecessary delay in the treatment of his decaying tooth. The medical records and Berry's steady complaints of escalating pain indicate that the delay unreasonably prolonged Berry's suffering, making summary judgment inappropriate. See, *e.g.*, *Grieveson*, 538 F.3d at 779-80 (evidence of one-and-a-half day delay before treating painful broken nose was sufficient to survive summary judgment); *Williams v. Liefer*, 491 F.3d 710, 716 (7th Cir. 2007) (affirming denial of judgment as a matter of law; jury could conclude that the delay in treatment "unnecessarily prolonged and exacerbated" prisoner's pain). Of course, we do not suggest that a minor delay in treatment constitutes deliberate indifference. See, *e.g.*, *Knight v. Wiseman*, 590 F.3d 458, 466 (7th Cir. 2009) (noting that two-and-a-half hour delay in treatment of plaintiff's shoulder injury "was minimal and had no adverse consequences"). Anyone who has ever visited a doctor's office knows that some delays in treatment are inevitable, particularly absent a life-threatening emergency. Such delays are even more likely in the prison environment. See, *e.g.*, *id.* at 467 (noting that delay was result of guards' inability to leave prison work gang unattended). The delay in this case, however, was neither minimal nor justified by Berry's status as a prisoner. Berry was forced to endure nearly two months of serious pain despite the availability of an obvious treatment—a simple dentist visit—that Berry had specifically

requested numerous times. The only apparent reason for that delay was that he had the misfortune of being transferred to a jail without an on-site dentist.

III. *The Jail Nurse*

We also conclude that Nurse Reich was not entitled to summary judgment. The district court concluded that Reich was entitled to defer to Dr. Butler regarding Berry's treatment. Here, however, the record shows that Dr. Butler last saw Berry on April 24th, six weeks before he was transferred to the DOC facility where he finally received the needed root canal. During much of that time, Nurse Reich was aware of Berry's ongoing pain and the ineffectiveness of the recommended pain medications, yet he apparently never consulted Dr. Butler again regarding whether a dentist's examination was necessary. Rather, Nurse Reich continued to respond personally to Berry's complaints (including one complaint directed to defendant Peterman), telling Berry that he could not see a dentist until his next DOC placement and asking if Berry needed to see Dr. Butler about an infection. Given the substantial passage of time after Dr. Butler last examined Berry and Nurse Reich's continued responses to Berry's complaints during that time, a jury could conclude that Reich acted independently rather than on Dr. Butler's instructions and was therefore personally responsible for delaying Berry's dental treatment, at least after he last saw Dr. Butler on April 24th. A jury could conclude that the imposition of this delay constituted deliberate indifference to Berry's serious pain.

To the extent that Nurse Reich did in fact consult with Dr. Butler over the course of Berry's last weeks at the Waushara County Jail, though, a jury could question whether he could justifiably defer to Dr. Butler's opinions regarding Berry's dental complaints. Although a medical care system requires nurses to defer to treating physicians' instructions and orders in most situations, that deference may not be blind or unthinking, particularly if it is apparent that the physician's order will likely harm the patient. See Frank J. & Nancy M. Cavico, *The Nursing Profession in the 1990's: Negligence and Malpractice Liability*, 43 Clev. St. L. Rev. 557, 613-16 (1995) (discussing cases). As an ethical matter, a nurse confronted with an "inappropriate or questionable practice" should not simply defer to that practice, but rather has a professional obligation to the patient to "take appropriate action," whether by discussing the nurse's concerns with the treating physician or by contacting a responsible administrator or higher authority. American Nurses Ass'n, Code of Ethics for Nurses With Interpretive Statements, Provision 3.5 (2001), *available at* http://nursingworld.org/ethics/code/protected_ nwcoe813.htm (last visited April 9, 2010). We do not suggest that these professional standards are part of the Eighth Amendment, but they are relevant in evaluating whether Nurse Reich can rely on the general supervision by Dr. Butler to excuse his responses to Berry's continuing complaints of pain in a way that otherwise could reasonably be deemed to show deliberate indifference to his pain.

Also, a jury could find that Nurse Reich's deference was less justifiable than usual because this was a case

of dental pain rather than a medical problem clearly within Dr. Butler's professional expertise. Nothing in the record indicates that Dr. Butler had any dental training or experience to which Nurse Reich could or should defer. As a matter of simple common sense, few people would turn to a general practitioner physician for the treatment of a cavity or gum disease.

We are not persuaded, at least as a matter of law, by Nurse Reich's argument that he cannot be held liable because he lacked the authority to refer Berry to a dentist without further approval. Nurse Reich always had the ability to contact Peterman or other supervisory personnel to voice any concerns about Dr. Butler's treatment of Berry's condition. See American Nurses Ass'n, Code of Ethics for Nurses With Interpretive Statements, Provision 3.5.

In sum, Berry has offered sufficient evidence to defeat Nurse Reich's motion for summary judgment. The extent to which Nurse Reich relied on Dr. Butler's medical judgment and the reasonableness of any such reliance require further exploration at trial, particularly given the regime of individual liability under section 1983, under which the defendants might try to blame each other for Berry's suffering.

Accordingly, we AFFIRM the judgment of the district court as to defendant Peterman, REVERSE as to defendants Reich and Butler, and REMAND this matter for further proceedings consistent with this opinion. Thus far, Berry has pursued this case without a lawyer, and he has presented the evidence and his legal arguments well. If this

matter proceeds to a trial on the merits, however, the district court will want to consider the possibility, pursuant to the standards set forth in *Pruitt v. Mote*, 503 F.3d 647 (7th Cir. 2007) (*en banc*), of requesting counsel to represent him at trial if Berry is receptive to the idea. See 28 U.S.C. § 1915(e)(1).

MANION, *Circuit Judge*, concurring in part and dissenting in part. I agree with the court (and the district court) that Berry has raised a genuine issue of material fact regarding the exhaustion of his administrative remedies, that he suffered a serious medical condition, and that the jail administrator is entitled to summary judgment because he was not deliberately indifferent to Berry's situation. However, I disagree with the court that Berry has offered sufficient evidence that would allow a jury to infer that Dr. Butler and Nurse Reich acted with deliberate indifference when responding to Berry's complaints about the painful condition of his tooth. Therefore I would affirm the district court's conclusion that given the evidence most favorable to Berry, a reasonable jury could not find that Dr. Butler or Nurse Reich were deliberately indifferent to his medical needs.

At most, this unfortunate case amounts to negligence on the part of Dr. Butler and Nurse Reich. I don't believe

a reasonable jury could even find gross negligence, much less deliberate indifference which would amount to intentional cruel and unusual punishment. As the district court noted, "Berry cannot overcome the record showing that he was offered repeated medical examinations to screen an emergency dental situation. Defendant Butler states that she did not see any sign of infection or other emergency dental condition when she examined Berry twice in April of 2008." In addition, the district court noted that "Nurse Reich was entitled to rely on Dr. Butler's conclusion that Berry did not require emergency dental care. In addition, Reich responded promptly to Berry's many complaints by offering advice on minimizing pain, arranged for Berry to try a different pain reliever approved by the doctor, and offered to schedule a third medical examination if Berry would request one." This court observes that "the doctor and nurse acted with deliberate indifference toward his condition by persisting in an easy but ineffective course of treatment that subjected him to two months of serious but avoidable pain." To describe the treatment as "easy but ineffective" describes nothing more than negligence. Dr. Butler supposedly examined Berry to determine if he had an infection. An easy but likely effective alternative would have been to prescribe a strong enough antibiotic (instead of a pain pill) to attack what should have been an obvious infection, but if not obvious at least a precautionary alternative. If the tooth was infected (the dentist later described it as necrotic), the infection that was likely causing the significant pain would have been eliminated quickly with an effective antibiotic. That

process would have been just as "easy," and would have temporarily resolved the problem until the dentist could get at it upon Berry's return to prison.

Therefore I would conclude that the evidence most favorable to Berry amounted to negligence on the part of both the doctor and the nurse. Berry turned down the offer of a third visit by the doctor, and Nurse Reich was in continual contact with him with various attempts, albeit ineffective, to treat his pain. On numerous occasions this court has held that when prison medical personnel continue to pay attention to and to treat a prisoner's medical complaints, even if the treatment is not up to par, the medical efforts on the prisoner's behalf are enough to overcome any presumption of deliberate indifference. See, e.g., *Duckworth v. Ahmad*, 532 F.3d 675 (7th Cir. 2008). While that could likely be found as negligent treatment, it does not amount to a deliberately indifferent attitude that translates into cruel and unusual punishment. Therefore I would affirm the district court.