NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 15, 2012[*]
Decided February 24, 2012

**Before**

MICHAEL S. KANNE, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 11-1163

| | |
|---|---|
| ANDRE L. JOHNSON,<br>    *Plaintiff-Appellant*, | Appeal from the United States District<br>Court for the Southern District of Illinois. |
| *v.* | No. 3:08-cv-00016-GPM-DGW |
| MARY LOFTIN, et al.,<br>    *Defendants-Appellees*. | G. Patrick Murphy,<br>*Judge*. |

**O R D E R**

Andre Johnson, an Illinois inmate suffering from HIV and hepatitis C, appeals the grant of summary judgment against him in this action under 42 U.S.C. § 1983, claiming that a 17-month delay in receiving medication violated his Eighth Amendment right to adequate medical care. Because the defendant physicians regularly saw and treated Johnson throughout this period and adhered to the course of treatment prescribed by the Illinois Department of Corrections and the Bureau of Prisons, we affirm.

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

In reviewing this grant of summary judgment against Johnson, we construe the record in his favor. *See Arnett v. Webster*, 658 F.3d 742, 757 (7th Cir. 2011). In May 2006 Johnson was imprisoned at the Lawrence Correctional Center, where his medical care was overseen by Drs. Mary Loftin and Dennis Larson, the regional medical director of Wexford Health Sources. Weeks later Dr. Loftin diagnosed Johnson with HIV and hepatitis C. Hepatitis C is a disease caused by the HCV virus, which can damage the liver. For most infected persons, the disease progresses slowly over many years. For persons co-infected with the HIV virus, however, HIV can hasten the progression of chronic hepatitis C to end-stage liver failure.

The Bureau of Prisons guidelines, upon which IDOC policies are based, set forth standards for treating prisoners co-infected with HIV and hepatitis C. Under the guidelines, co-infected inmates should receive a liver biopsy. *See* Clinical Practice Guidelines, *Stepwise Approach for the Prevention and Treatment of Hepatitis C and Cirrhosis* (Mar. 2011), http://www.bop.gov/news/PDFs/hepatitis_c.pdf. And before receiving HCV medications, co-infected patients should consult with an infectious disease specialist.

After diagnosing Johnson's co-infection, Dr. Loftin began a course of treatment for the hepatitis C. She tested Johnson's liver enzymes and tried to meet with him, but was unable to do so for two months because Johnson was transferred to another jail on a court writ[2] and then placed on suicide watch. Meanwhile Dr. Loftin ordered additional tests, which disclosed that his liver enzymes were normal. In August 2006, she met with him to recommend a liver biopsy and warned about the side effects of HCV medications, including depression. Dr. Loftin evaluated his lab tests and noted risk factors, including a history of mental illness. She reviewed his file with Dr. Larson, who approved the biopsy. The following month, Johnson received the biopsy, which revealed the presence of chronic hepatitis C and scarring and inflammation of the liver. Dr. Loftin then reevaluated the case with Dr. Larson, who approved a consultation with an infectious disease specialist.

In October Johnson was transferred to the Pinkneyville Correctional Center, where his condition was next overseen by Dr. Larson and Dr. Adrian Feinerman. A month later, Dr. Feinerman met with Johnson about consulting with an infectious disease specialist. But before an appointment could be arranged, Johnson was again transferred to another jail on a court writ. When he returned, the appointment was set, and in March 2007 Johnson met

---

[2] During the seventeen months, Johnson was transferred to another jail on several court writs for a total of at least 105 days to participate in an unrelated civil rights suit. *See Johnson v. Walker et. al.*, No. 3:07-cv-3250 (N.D. Ill. Sept. 12, 2007).

with an infectious disease specialist, who recommended that he receive HCV medications as soon as his mental illness stabilized.

The day after Johnson returned from a transfer on another court writ, Dr. Larson advised him of next steps, including the need to consult with a psychiatrist to treat his depression before beginning HCV medications. Johnson did meet with a psychiatrist and completed a course of antidepressants, at which time Dr. Larson recommended that he receive HCV medications. When Johnson returned in June from a final court writ, he began a forty-eight week regimen of medications for his hepatitis C.

Johnson then sued several IDOC physicians, including Drs. Loftin, Feinerman, and Larson, as well as Wexford Health Sources, claiming that they violated his Eighth Amendment right to adequate medical care by delaying treatment, and that they were professionally negligent under Illinois law.

The district court granted summary judgment for the defendants on the Eighth Amendment claim because Johnson had failed to show that the physicians were deliberately indifferent to his medical condition. The district court acknowledged that the co-infection presented an objectively serious medical condition, but concluded that Johnson had been seen repeatedly and treated throughout the 17 months during which he claimed not to have received medication. According to the court, medical records reflected that the physicians identified the co-infection, counseled Johnson on the disease, performed a HCV work-up, conducted a liver biopsy, arranged consultations with specialists, and administered hepatitis C medications.

On appeal Johnson challenges only the grant of summary judgment on the Eighth Amendment claim, arguing that the 17-month delay in receiving his medications was deliberate indifference. Johnson essentially contends that there is a genuine dispute of material fact about whether the delay was so "medically unacceptable" as to amount to deliberate indifference.

To succeed on his Eighth Amendment claim, Johnson must show (1) that he suffered from an objectively serious medical condition, and (2) that the defendants were deliberately indifferent to that medical condition. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010). Only the second prong is at issue here–whether Johnson introduced evidence that the physicians acted with "a sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). We have held that physicians are entitled to deference in treatment decisions "unless no minimally competent professional would have so responded under similar circumstances." *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008); *see Duckworth v. Ahmad*, 532 F.3d 675, 682 (7th Cir.

2008). And when a physician intentionally withholds efficacious treatment, we have held that the delay may amount to deliberate indifference if the delay results in serious harm or unnecessary pain. *See Berry*, 604 F.3d at 441; *Arnett*, 658 F.3d at 753; *Knight v. Wiseman*, 590 F.3d 458, 466 (7th Cir. 2009).

As the district court concluded, Johnson cannot point to evidence showing that the physicians' course of treatment departed from accepted professional standards of care or that the physicians withheld efficacious treatment from him. To the contrary, the record shows that the physicians were responsive to his co-infection and adhered to IDOC and Bureau of Prisons guidelines. From May to September 2006, Dr. Loftin diagnosed Johnson with the co-infection, evaluated his liver enzymes and white blood cell counts, conferred with him, and had his liver biopsied. After scheduling setbacks because Johnson was first transferred on court writ and then because the infectious disease specialist had no appointment available for months, Dr. Feinerman arranged a March 2007 visit with the specialist, who recommended that Johnson receive HCV medications after his mental illness was stabilized. At each phase of the course of treatment, Drs. Loftin and Feinerman consulted with Dr. Larson, who approved the liver biopsy, an appointment with both an infectious disease specialist and a psychiatrist, and ultimately a 48-month regimen of HCV medications. The district court, moreover, correctly concluded that the physicians should not be faulted for time delays beyond their control, *see Walker v. Benjamin*, 293 F.3d 1030, 1038 (7th Cir. 2002), as here there were many months when Johnson was unavailable for treatment because he was away on court writ, on suicide watch, or under a psychiatrist's care. As for Wexford, Johnson concedes that it applied IDOC and federal guidelines for prisoners co-infected with the HIV and HCV viruses, and he cannot point to any practice that violates constitutional standards. To the extent he suggests that the physicians should have deviated from IDOC and federal guidelines to administer HCV medications, this suggestion is merely disagreement with a prescribed course of treatment and falls short of deliberate indifference. *See Berry*, 604 F.3d at 441; *Duckworth*, 532 F.3d at 680.

**AFFIRMED**.