**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted September 7, 2016[*]
Decided September 12, 2016

**Before**

DIANE P. WOOD, *Chief Judge*

RICHARD A. POSNER, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

No. 15-2355

| | |
|---|---|
| LUCIEN SCOTT McARTHUR, <br> *Plaintiff-Appellant*, | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 13-cv-1248 |
| ANDREW TILDEN, et al., <br> *Defendants-Appellees*. | Joe Billy McDade, <br> *Judge*. |

**O R D E R**

Lucien McArthur, an Illinois inmate, claimed in this suit under 42 U.S.C. § 1983 that a prison physician (and other allegedly complicit defendants) violated the Eighth Amendment by refusing to renew a prescription for orthopedic shoes. The district court granted summary judgment for the defendants, and McArthur appeals.

---

[*] We have unanimously agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

Except as noted, the evidence submitted at summary judgment is undisputed. In 2003, before his imprisonment, McArthur had fallen from a ladder and fractured his left heel. He underwent surgery, including the insertion of screws into his heel. Doctors told McArthur that he would always have some degree of pain and would likely develop arthritis in his ankles, knees, and hips. In 2005, while McArthur was incarcerated at Stateville Correctional Center, a podiatrist prescribed "special shoes other than state-issued shoes." McArthur was given orthopedic shoes, and later after he was transferred to Pontiac Correctional Center, doctors there ordered replacement shoes in 2008 and 2010.

But in 2012, when McArthur requested a new pair of the shoes, he was refused. Dr. Andrew Tilden, who was employed as Pontiac's medical director by healthcare provider Wexford Health Sources, promised to review McArthur's medical file and evaluate his continuing need for the shoes. At his deposition McArthur said that, when he asked again at a follow-up appointment, Dr. Tilden told him that "they don't give them out anymore." Dr. Tilden denies saying this. He avers that he was authorized to order orthopedic shoes and has done so when warranted. He testified by affidavit that he refused McArthur's request for the shoes because, in his professional opinion, McArthur did not need them, given that he had a "strong gait," could walk with "minimal discomfort," and was not complaining of foot pain. These were signs that McArthur's fracture had healed, the doctor explained, and he added that it is "not standard practice for patients to receive 'orthopedic' footwear for the remainder of their lives after suffering a foot fracture."

Although Dr. Tilden declined to renew McArthur's prescription for the orthopedic shoes, he continued to treat McArthur for his ongoing complaints of hip pain. McArthur had been diagnosed with osteoarthritis of the hips, and Dr. Tilden continued seeing him regularly for this condition. He prescribed several different medications and ordered that McArthur be given a low bunk.

In granting summary judgment for the defendants, the district court concluded that a jury reasonably could find that McArthur's old foot injury constituted an objectively serious medical need. But, the court continued, McArthur lacked evidence that Dr. Tilden's decision—discontinuing his prescription for orthopedic shoes—"fell outside the bounds of acceptable professional judgment."

Our evaluation is de novo, *Petties v. Carter*, No. 14-2674, 2016 U.S. App. LEXIS 15524, at *6 (7th Cir., Aug. 23, *amended* Aug. 25, 2016) (en banc), and if we agree with the district court that a jury could not find that Dr. Tilden was deliberately indifferent to

McArthur's foot injury, then neither could Wexford face liability. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Pyles v. Fahim*, 771 F.3d 403, 412 (7th Cir. 2014). Likewise, the remaining defendants—administrators who were sued on the theory that they contributed to the denial of McArthur's shoes because they did not respond more quickly to his grievances and requests for medical records—could not have faced liability independently of Dr. Tilden because these defendants had deferred to his exercise of medical judgment. *See King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012); *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010); *Greeno v. Daley*, 414 F.3d 645, 655–57 (7th Cir. 2005).

In this court McArthur contends that the evidence he furnished—the earlier prescriptions for orthopedic or other "special" shoes, Dr. Tilden's admission that he lacks specialized training in orthopedics, and his own testimony that Dr. Tilden had said Wexford no longer would provide orthopedic shoes—is sufficient for a jury reasonably to find that Dr. Tilden did not exercise medical judgment in refusing him the shoes. Like the district court, however, we conclude that this evidence is too insubstantial for a jury to decide that Dr. Tilden's decision was "so significant a departure from accepted professional standards or practices that it calls into question whether the doctor actually was exercising his professional judgment." *See Pyles*, 771 F.3d at 409; *see also Sain v. Wood*, 512 F.3d 886, 894–95 (7th Cir. 2008). At the time Dr. Tilden declined to authorize replacement shoes, McArthur had not complained of foot pain, had a "strong gait," and could walk with minimal discomfort. Dr. Tilden attested that McArthur's fracture appeared to have healed and that the standard of care for a heel fracture does not include a lifelong prescription for orthopedic shoes. McArthur submitted no medical evidence suggesting that Dr. Tilden's decision violated professional standards, other than the previous doctors' orders for orthopedic shoes. But physicians need not defer to another doctor's diagnosis or treatment decisions and are free to make an independent medical determination so long as it is "based on . . . professional judgment and does not go against accepted professional standards." *Holloway v. Del. Cnty. Sheriff*, 700 F.3d 1063, 1074 (7th Cir. 2012); *see Norfleet v. Webster*, 439 F.3d 392, 393, 396–97 (7th Cir. 2006) (concluding that doctor was not deliberately indifferent when he did not provide inmate with soft-soled shoes that had been provided at previous prison). McArthur argues that Dr. Tilden's opinion was meaningless because he is not an orthopedic specialist. But he did not show that he had an obvious need to be referred to a podiatrist, so we cannot say that Dr. Tilden's decision not to refer was an "obdurate refusal" or "blatantly inappropriate." *See Pyles*, 771 F.3d at 411–12.

Finally, although McArthur contends that Dr. Tilden told him that for cost reasons Wexford no longer provides orthopedic shoes—a contention that we must accept given the litigation's posture—this does not support McArthur's legal position. Because the record does not contain any evidence suggesting that he needs special shoes nine years after his injury, other reasons why he might not have received them do not matter.

We have reviewed McArthur's remaining contentions, and none has merit.

AFFIRMED.