**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted January 21, 2021[*]
Decided January 22, 2021

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 19-2576

| | |
|---|---|
| RICKY BELL, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Southern District of Illinois. |
| | |
| *v.* | No. 3:17-cv-01301-JPG-RJD |
| | |
| WEXFORD HEALTH SOURCES, INC., | J. Phil Gilbert, |
| and RALPH JOHNNIE. | *Judge*. |
| *Defendants-Appellees*. | |

**O R D E R**

Ricky Bell, an Illinois inmate, broke one of his teeth, and the prison's sole dentist, who had a short, scheduled absence, extracted it a week later, immediately upon his return. Bell sued the dentist and Wexford Health Sources, Inc., the prison's medical care provider, alleging that the one-week delay violated the Eighth Amendment. The district court entered summary judgment for the defendants. Because no jury could conclude

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

that the dentist knew about but ignored a medical condition that required a faster response, and because Wexford was not responsible for the absence of a substitute provider during dentist's scheduled absence, we affirm the judgment.

On a Saturday in June 2017, while incarcerated at Centralia Correctional Center in Illinois, Bell bit into ice and broke a tooth in half. Bell's broken tooth was part of a long history of dental issues: He suffers from periodontal disease (chronic gum infection that can lead to tooth loss), and he has no teeth on one side of his mouth. Bell sought help right away, submitting a request for dental treatment at the prison's medical center. He wrote that he had a "painful tooth that has broken off" and asked to have "that tooth … extracted as soon as possible."

The Illinois Department of Corrections has a policy of closing the dental unit on weekends without putting any dentist on call for emergencies. As a result, the prison's sole dentist, Dr. Ralph Johnnie, did not receive Bell's request until the following Monday, two days after Bell broke his tooth. (Incidentally, on that Monday, Bell visited the commissary and bought candies and personal items, but not any over-the-counter pain medicine.) The prison had scheduled Dr. Johnnie to be off work for the rest of the week and had not arranged for another dentist to be on call during his absence. Thus, the soonest that Dr. Johnnie could extract the tooth was the following Monday—his first day back at the prison. He scheduled the extraction for then.

Unaware of Dr. Johnnie's absence, Bell sought a prompt response to his request for treatment. On Tuesday, the first day of Dr. Johnnie's absence, Bell had received no response to his first request for treatment, so he submitted another. This time he stated his condition in detail. He said he had been "in pain for three days now"; the broken tooth made eating difficult, food was getting caught in the cavity of his broken tooth, and he needed an "emergency" extraction. Dr. Johnnie did not receive this request during his scheduled absence. Bell also tells us that the broken tooth had exposed a nerve, and, as he awaited a response during this week, he had difficulty sleeping (because of pain), eating (because his only teeth were on the side of his mouth with the broken tooth), and drinking water or brushing his teeth (because cold water was painful near the exposed nerve). The following Monday, as scheduled, Dr. Johnnie returned and successfully extracted what remained of Bell's broken tooth.

Bell sued Dr. Johnnie and Wexford Health Sources, Inc., the prison's medical care provider. He alleged that Dr. Johnnie's delay in treating his tooth, and the pain from that delay, violated the Eighth Amendment. See 42 U.S.C. § 1983. Further, he alleged,

Wexford added to the unconstitutional delay in treatment by allowing a policy in which the dental unit was closed at times with no contingency plan for emergency staffing.

The district court granted the defendants' motion for summary judgment. It ruled that no reasonable jury could find that Bell's condition was serious because, if it were, Bell would have bought over-the-counter pain medicine at the commissary (when he visited the Monday after breaking his tooth), but he did not. Having so concluded, the court did not decide the alternative ground that the parties litigated—whether a jury could find that the defendants were deliberately indifferent to the condition.

On appeal, Bell primarily challenges the entry of summary judgment for Dr. Johnnie. To get past summary judgment, Bell had to furnish evidence from which a reasonable jury could conclude that he suffered from a serious medical condition and Dr. Johnnie was deliberately indifferent to it. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (en banc).

Construing the record in Bell's favor, as we must at this stage, *see Berry v. Peterman*, 604 F.3d 435, 438 (7th Cir. 2010), we agree with him that he presented sufficient evidence of an objectively serious medical need: Along with periodontal disease, Bell had a broken tooth and exposed nerve causing excruciating pain that required prompt extraction or he would face a loss of eating, sleeping, drinking, and oral hygiene. *See Berry*, 604 F.3d at 438, 440 (reasoning that tooth decay, which left plaintiff unable to eat or brush teeth due to pain, constituted serious medical condition); *Board v. Farnham*, 394 F.3d 469, 480 (7th Cir. 2005) (collecting cases where dental pain accompanied by harm constituted serious medical need). The district court's view that Bell was not in serious pain because he did not buy over-the-counter pain medication— a view the defendants echo on appeal—reinforces a factual dispute rather than erases it. Although a jury might infer that Bell did not buy pain relievers because he was not in pain, it might also reasonably find that Bell did not do so because he thought that he should not self-medicate a serious dental condition until he first saw a dentist.

But even if Bell had a serious dental condition, a remand is not needed. The presence of a serious medical condition is not enough to warrant a trial against Dr. Johnnie unless Bell also furnished evidence that the dentist was deliberately indifferent to that condition. *See Olson v. Morgan*, 750 F.3d 708, 713–14 (7th Cir. 2014) (affirming grant of summary judgment in defendant's favor where plaintiff's broken tooth may have been a serious medical need, but defendant did not know about it). The district court never reached this question, but we can affirm on any basis that, as here, is

supported by the record and was adequately presented in the district court where Bell had an opportunity to contest it. *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 963–64 (7th Cir. 2019).

No reasonable jury could conclude that Dr. Johnnie knew about but recklessly ignored Bell's condition. *Farmer*, 511 U.S. at 837. After receiving Bell's initial request for treatment, all that Dr. Johnnie knew from Bell was that a "painful tooth … had broken off" and that he wanted an extraction "as soon as possible." Dr. Johnnie fulfilled Bell's request: He scheduled an extraction for one week later—the first day he returned to the prison. Bell has not presented any medical evidence suggesting that extractions of a broken tooth must happen faster. And nothing in Bell's first request would have tipped off Dr. Johnnie that he would be reckless if he did not ask the prison to act faster. Bell did not, for example, state that his broken tooth had exposed a nerve; that the pain was so severe that it affected his sleeping, eating, drinking, or hygiene; or that available, over-the-counter pain relievers were insufficient. *See Olson*, 750 F.3d at 713–14 (affirming summary judgment for dentist-defendant where he would not have interpreted a request for aspirin as indicating a serious medical condition). Bell's second request, which asserted some of these matters, might have put a dentist on notice of Bell's need for something more urgent than a week-out appointment to ease his pain. But the undisputed fact is that Dr. Johnnie did not see that request until he returned from his scheduled time off, the same day that he performed the extraction.

Bell next challenges the entry of summary judgment for Wexford. He argues that Wexford maintains a policy of closing the dental unit every weekend and not putting a dentist on call to handle emergencies during closures. The problem with this claim is that, based on the undisputed facts, the policy that Bell challenges is maintained by the policymakers at Illinois Department of Corrections—not Wexford. Bell points to no Wexford policy that contributed to a delay in his treatment. Thus, the entry of summary judgment for Wexford was proper. *See Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014).

AFFIRMED