NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 11, 2022[*]
Decided April 11, 2022

**Before**

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

THOMAS L. KIRSCH II, *Circuit Judge*

No. 21-2884

| | |
|---|---|
| ASHER HILL, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Southern District of Indiana, Terre Haute Division. |
| *v.* | No. 2:19-cv-00079-JPH-MG |
| DENNIS MEYER, et al., *Defendants-Appellees.* | James Patrick Hanlon, *Judge.* |

## O R D E R

Asher Hill, an inmate at Wabash Valley Correctional Facility, appeals the entry of summary judgment on his deliberate-indifference claims against his dentist and other prison officials, who, he maintains, delayed or denied him adequate dental treatment.

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

The district court concluded, based on the record before it, that no reasonable jury could find that any defendant was deliberately indifferent to Hill's dental needs. We affirm.

I.

We recount the facts in a light that favors Hill, the nonmoving party. *Henry v. Hulett*, 969 F.3d 769, 774 (7th Cir. 2020) (en banc). Hill, complaining of chronic mild pain in tooth #16, saw prison dentist Dennis Meyer on April 5, 2018. That was Dr. Meyer's first day treating patients at the prison. Dr. Meyer x-rayed the tooth and determined that it was supererupted (emerging too far from the jawbone); he also observed that Hill had moderate periodontitis that likely would never resolve. Because Hill wanted to save the tooth, Dr. Meyer performed an amalgam restoration (a "silver" filling). In a sworn affidavit, Hill states that he told Dr. Meyer at this appointment that he was also experiencing pain in another tooth, tooth #28, and that the pain in this tooth was "more severe" than in tooth #16, and that tooth #28 had a cavity that need to be re-filled. Hill recounts being told by Dr. Meyer that he could not refill the cavity at that time because he was scheduled to treat only tooth #16, which he had to treat first, and that Hill needed to submit another health-care request in six to eight weeks if he wished to have the cavity in tooth #28 refilled. Dr. Meyer's notes from that visit did not mention any emergent condition.

Twelve days later, Hill submitted a formal grievance asking to see the dentist "asap" for a "severe" toothache in his lower tooth (#28) that had "been hurting for four months." Someone from the prison's grievance office consulted Kimberly Hobson, the health-services administrator responsible for scheduling inmates' appointments. Hobson reviewed Hill's medical records and repeated Dr. Meyer's instruction that Hill submit a new health-care request form in six to eight weeks. The grievance office denied Hill's grievance. Hill appealed the decision, and Warden Richard Brown denied the appeal on grounds that Hill's dental care had been appropriate and in accordance with institutional policy.

Eight weeks after his appointment, on May 29, Hill submitted another health-care request form, reporting that he had lost a filling in tooth #28 and was experiencing "unbearable" pain, swelling in his jaw, soreness in his gums, and a discharge of pus and blood from "two painful bumps" that had formed under the cavity. The health-services department scheduled an appointment with Dr. Meyer for June 5, though the appointment had to be postponed a week to accommodate a scheduling conflict among the correctional officers assigned to escort him to the medical facilities.

On June 12, Dr. Meyer examined tooth #28 and diagnosed a cavity that was too large to fill, so he extracted the tooth. He prescribed ibuprofen for 30 days, for pain. The next week, Hill submitted a health-care request form complaining of severe pain and a need for stronger pain medication and an antibiotic. Two days later, Dr. Meyer examined Hill in his cell, prescribed the antibiotic amoxicillin, and renewed the ibuprofen prescription.

On September 19, Hill submitted another health-care request form stating that he broke tooth #8 when he bit into an apple and was experiencing pain. Dr. Meyer evaluated him later that day and found that the crown on that tooth had broken off. Dr. Meyer told Hill that he would be scheduled for a resin-filling replacement. On September 25, Dr. Meyer x-rayed tooth #8, removed decay, and restored the resin. In his affidavit, Hill asserts that he told Dr. Meyer that day of "severe pain" in another tooth—tooth #14—and "sore and swollen" gums, but Dr. Meyer replied that he could not treat that tooth until Hill submitted another health-care request form.

In early October, Hill submitted multiple health-care request forms. According to his medical records, he complained of pain again in tooth #16 on October 1, and he reported a fracture in the filling in tooth #8 on October 12; these requests were forwarded to Dr. Meyer's office. On October 26, Hill submitted a formal grievance complaining that he had pain in tooth #16 that was "excruciating" and that he needed to see a dentist as soon as possible. The grievance office again contacted Hobson, who upon reviewing Hill's medical records and seeing no reports of any emergent conditions, responded that Hill had already been "seen by the dentist for this issue." The grievance office then denied this grievance. Hill submitted another health-care request form on October 30, complaining of "excruciating pain" in tooth #16 and "sore and swollen" gums.

Hill eventually saw Dr. Meyer on November 13, in connection with his periodic oral exam. Dr. Meyer's notes from that visit did not refer to any issues with tooth #16, though he did report that Hill had complete bone loss in tooth #14 and that the tooth was non-restorable. Dr. Meyer prescribed a ten-day course of antibiotic treatment, after which he extracted tooth #14.

Hill then submitted multiple formal grievances over the quality of his treatment for tooth #8. In November 2018, he asked for a post and crown for that tooth. The following month, he complained about the tooth's color and shape with the resin filling

Dr. Meyer had replaced in September. Dr. Meyer responded that no further treatment of tooth #8 was medically necessary because Hill's complaints were considered cosmetic issues.

In April 2019, Hill submitted a grievance complaining that the roots of tooth #14 remained in place following its extraction. Dr. Meyer examined the tooth #14 but found no roots left behind.

Hill turned to federal court for relief. As relevant to this appeal, he brought deliberate-indifference claims against each of the individual defendants. He asserted that Dr. Meyer (1) delayed treatment of teeth #16, #28, #8, and #14; (2) failed to provide a post and crown for tooth #8; and (3) failed to provide a root canal in tooth #28. Hill also asserted that Hobson refused to direct Dr. Meyer to provide him with the care he requested. And he asserted that Warden Brown and two employees in the prison's grievance office (Michael Smith and Nikki Tafoya) willfully failed to arrange for immediate treatment in response to his grievances.

The district court entered summary judgment for the defendants, concluding that there was no evidence that any defendant had been deliberately indifferent to Hill's medical needs. The court devoted most of its attention to Hill's claims against Dr. Meyer. With regard to the alleged delays in treatment, the court determined that no reasonable jury could find that the delay in treating Hill's teeth was unacceptable. As for tooth #28, the court concluded that no jury could infer that Dr. Meyer knew that the pain from tooth #28 required immediate care or that he acted with deliberate indifference when he told Hill to submit another health-care request form within two months to receive treatment for it. With regard to tooth #8, the court concluded that no jury could find that Dr. Meyer was deliberately indifferent because he treated the tooth on the day that Hill complained about it. And with regard to tooth #14, the court found no evidence of deliberate indifference because Dr. Meyer extracted the tooth within two weeks of an x-ray that indicated bone loss.

The court also entered summary judgment for the remaining defendants. Regarding Hobson, the court concluded that Hill had not produced evidence that she had any authority to direct Dr. Meyer to provide care or to override his medical judgment, so no reasonable jury could conclude that she acted with deliberate indifference by delaying or denying treatment. As for Warden Brown and the two employees from the grievance office, the court concluded that they appropriately relied on Dr. Meyer's medical expertise in denying Hill's grievances, and that they had no

knowledge or reason to believe that Dr. Meyer's medical decisions put Hill at risk of substantial harm.

II.

A prison official who acts with deliberate indifference to a substantial risk of serious harm to an inmate's health violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). A delay in medical treatment may constitute deliberate indifference if the delay exacerbates the injury or unnecessarily prolongs an inmate's pain, particularly if a provider knows that the pain is treatable. *Reck v. Wexford Health Sources, Inc.*, 27 F.4th 473, 483 (7th Cir. 2022). The length of delay that violates the Eighth Amendment depends on the severity of the condition and the ease of providing treatment: For example, a steadily worsening toothache that causes severe pain to an inmate while eating and sleeping could support a finding that a two-month delay in referring the inmate to a dentist constitutes deliberate indifference. *Berry v. Peterman*, 604 F.3d 435, 438, 441 (7th Cir. 2010). However, a medical professional's treatment decisions will be afforded deference unless no minimally competent professional would have responded as such under the circumstances. *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014).

Hill's strongest challenge to the district court's ruling in favor of Dr. Meyer concerns the treatment of tooth #28. This is the court's rationale for finding no evidence of deliberate indifference:

> Dr. Meyer testified in his affidavit that "[t]here were no emergent conditions identified at the conclusion of the [April 5] appointment." … While Mr. Hill told Dr. Meyer that the pain in tooth #28 was greater than the pain in tooth #16, a reasonable jury could not conclude from this information that Dr. Meyer knew the pain from tooth #28 demanded immediate care. The jury therefore could not find that Dr. Meyer's instruction to submit another Health Care Request form within eight weeks was an act of deliberate indifference.

(District court's order, at 10.) Hill asserts that the court erred by undervaluing his evidence—essentially the testimony in his affidavit—that Dr. Meyer disregarded his complaints of pain in tooth #28 at his April 5 appointment, forcing him to endure weeks of severe pain before he could return for another appointment. He argues that a reasonable jury could conclude that Dr. Meyer's decision to delay treatment of that tooth was an act of deliberate indifference.

But Hill's affidavit alone is insufficient to create a fact issue over the manner in which Dr. Meyer responded to his particular complaints regarding the tooth. While Hill asserts that he informed Dr. Meyer at the appointment of experiencing "more severe" pain in tooth #28 than in tooth #16, he emphasizes that he "specifically asked Dr. Meyer to refill the cavity in my #28 tooth" and was told by Dr. Meyer that tooth #16 had to be treated first because that was the purpose of the appointment. Nothing in the record reflects that Dr. Meyer understood the condition of tooth #28 to be urgent or that Hill's complaint of pain necessitated immediate care. The evidence may perhaps reflect a disagreement between Hill and Dr. Meyer about the appropriate course of treatment, but it does not suggest that Dr. Meyer acted with a reckless disregard for Hill's well-being, *see Reck*, 27 F.4th at 485, even after he instructed Hill to submit another health-care request form within two months.

Hill next argues that the district court overlooked evidence that Dr. Meyer prolonged his pain in tooth #14 by requiring him to schedule a separate appointment for treatment of that tooth. Hill states in his affidavit that he complained of "excruciating" pain in this tooth in the health-care request forms that he submitted on October 1 and 30, but Dr. Meyer did not evaluate the tooth until November 13, when he diagnosed complete bone loss. Hill's dental records, however, indicate that these forms reported pain in teeth #16 and #8, not tooth #14. Because no other evidence in the record reflects that Dr. Meyer was aware of Hill's pain in tooth #14, the district court properly found no disputed fact regarding the treatment of this tooth.

Turning to Hobson, Hill contends that the district court overlooked the evidence that she prolonged his discomfort by not arranging prompt treatment in response to his multiple reports of pain, particularly in tooth #28. Hill argues that he suffered unnecessary, prolonged pain when she did not schedule an immediate appointment and instead repeated Dr. Meyer's instruction to submit another health-care request form six to eight weeks later.

But summary judgment for Hobson was proper because Hill has not produced evidence showing that Hobson, who worked in a non-medical capacity as a health services administrator, had the authority to order specific care or override Dr. Meyer's medical judgment. *See Eagan v. Dempsey*, 987 F.3d 667, 694 (7th Cir. 2021). Moreover, as the district court explained, Hill pointed to no evidence that Hobson had reason to question the adequacy of the treatment he was receiving from Dr. Meyer. *Id.*

Finally, Hill challenges the summary judgment for Warden Brown and the two grievance-office employees, arguing that the court overlooked evidence that they prolonged his severe pain when they willfully rejected his grievances seeking immediate treatment. But the court appropriately concluded that these prison officials too were entitled to defer to the medical staff's professional judgment. *Id.* According to Hill's grievance records, the grievance-office employees Smith and Tafoya both consulted with Dr. Meyer and Hobson about Hill's dental records, and in so doing they reasonably relied on Dr. Meyer's medical judgment that Hill had no condition requiring immediate treatment.

We have considered Hill's remaining arguments, and none has merit.

AFFIRMED