*693 WILLIAMS, Circuit Judge,
dissenting.
“The Eighth Amendment safeguards the prisoner against a lack of medical care that may result in pain and suffering which no one suggests would serve any penological purpose.” Rodriguez v. Plymouth Ambulance Serv., 577 F.3d 816, 828 (7th Cir.2009). To succeed on an Eighth Amendment claim based on deficient medical care, a plaintiff must show that he suffered from an objectively serious medical condition and that each individual defendant was deliberately indifferent to that condition. Berry v. Peterman, 604 F.3d 435, 440 (7th Cir.2010). “Deliberate indifference occurs when a defendant realizes that a substantial risk of serious harm to the prisoner exists, but the defendant disregards that risk.” Id. It is intentional or reckless conduct, not mere negligence. Id. (citing Gayton v. McCoy, 593 F.3d 610, 620 (7th Cir.2010)). There is no dispute that Petties’s Achilles tendon rupture was objectively serious. So the only issue in this appeal is whether Petties has presented enough evidence from which a reasonable jury could conclude that Dr. Carter and Dr. Obaisi acted with deliberate indifference toward his serious injury. Viewing the facts in the light most favorable to Petties and drawing all reasonable inferences in his favor as we must, Pagel v. TIN Inc., 695 F.3d 622, 624 (7th Cir.2012), in my view, he has.
A. Dr. Carter
On this record a jury could reasonably conclude that Dr. Carter was deliberately indifferent by failing to immobilize Pet-ties’s ankle despite his employer’s protocol for a ruptured Achilles tendon and his testimony that immobilization was the appropriate treatment. On January 19, 2012, the day of Petties’s injury, Dr. Carter concluded that Petties suffered an “Achilles tendon rupture.” However, he did not immobilize Petties’s ankle with a splint (or by any other means), even though Wexford’s written protocols direct that treatment for a ruptured Achilles tendon is “splint, crutches.” Petties met with other medical personnel in the following weeks, including a meeting with Dr. Carter on February 14, but Dr. Carter failed to immobilize his ankle then and Petties did not receive any type of immobilization until March 15, nearly two months after his injury. Evidence that a medical provider failed to abide by an established treatment protocol is evidence from which a jury could infer deliberate indifference. See Mata v. Saiz, 427 F.3d 745, 757-58 (10th Cir.2005) (reversing summary judgment where nurse’s violation of published health-care requirements was circumstantial evidence that she knew of substantial risk of harm); see also Phillips v. Roane Cnty., Tenn., 534 F.3d 531, 542-43 (6th Cir.2008) (affirming denial of qualified immunity for paramedic whose failure to follow established treatment protocols could constitute deliberate indifference). Wexford’s protocol is explicit that a physician attending to a ruptured Achilles tendon employ “splint, crutches, antibiotics if laceration” and also make an “urgent” referral for further treatment. Dr. Carter admitted having seen about ten ruptured Achilles tendons previously, and he himself recognized and diagnosed a “rupture” the same day that Petties was injured. He ordered an urgent referral for an MRI and an appointment with an orthopedist, yet during this lawsuit he has never explained why he disregarded the directive to “splint,” or provide a splint for, Petties’s ankle.
Failing to immobilize the ankle caused Petties to suffer unnecessary pain during this eight-week period. Dr. Puppala testified that making Petties walk on his left ankle without any form of cast until March had added to his pain and likely widened the gap in his torn tendon. Furthermore, Petties himself testified that he was in *694 extreme pain during those eight weeks. He said he felt “constant, severe pain” even when he used crutches and the pain was so bad he had difficulty sleeping. Two weeks after the injury, on January 27, at an appointment, Petties says that he could not bear weight on his left foot without severe pain.[1] On February 13, a provider who saw him in the clinic noted in Pettiest chart that he had complained that his Achilles tendon was “killing” and he was unable to walk up stairs because of the pain. It is widely known that failing to immobilize an Achilles tendon rupture results in extreme pain and no one has put forward any medical justification for causing Petties this unnecessary additional pain. Petties has presented sufficient evidence to create a material issue of fact about whether Carter intentionally or with reckless disregard denied effective treatment. This deliberate indifference to Petties’s prolonged, unnecessary pain can itself be the basis for an Eighth Amendment claim. See Smith v. Knox Cnty. Jail, 666 F.3d 1037, 1039-40 (7th Cir.2012). Prolonged and unnecessary pain resulting from a significant delay in effective treatment may support a claim of deliberate indifference. Berry, 604 F.3d at 441. “A delay in treating nonlife-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate’s pain.” Arnett v. Webster, 658 F.3d 742, 753 (7th Cir.2011). We have said that the length of the delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment. Id.) see also Williams v. Liefer, 491 F.3d 710, 716 (7th Cir.2007) (affirming denial of motion for judgment as a matter of law because “a reasonable jury could have concluded from the medical records that the delay unnecessarily prolonged and exacerbated [the plaintiffs] pain and unnecessarily prolonged” the plaintiffs serious health condition). Dr. Carter testified that he never recalled splints not being available at the prison. But he still failed to splint Petties’s ankle at any point during those two months. The length of delay here is intolerable given the seriousness of Pet-ties’s injury and the ease of providing the immobilization at the prison. See Arnett, 658 F.3d at 753.
In my view, the majority wrongly finds that “a jury could not reasonably conclude that Dr. Carter was deliberately indifferent by waiting to give Petties a splint or boot.” As I’ve discussed, there is ample evidence from which a reasonable jury could conclude Dr. Carter was deliberately indifferent.[2] In drawing its conclusion, the majority minimizes Dr. Carter’s inaction in the face of protocol (and medical consensus that proper treatment of an Achilles tendon rupture includes immediate immobilization) on several grounds, though none are persuasive. For one, it follows the district court in seizing on a statement from Dr. Puppala’s deposition that a torn Achilles tendon “would probably heal” without a boot. But Dr. Puppala testified that he would always immobilize a patient’s ankle unless he could not because of an open sore. And more importantly, Dr. Puppala never suggested that failing to immobilize a ruptured Achilles tendon would not needlessly cause heightened pain even if the tendon would “probably” still heal eventually. A delay in treatment need not aggravate an inmate’s condition *695 in order to be actionable; pain alone is sufficient to establish a valid Eighth Amendment claim. See Smith, 666 F.3d at 1039-40 (“[The plaintiff] contends that even if his condition did not worsen from the delay, deliberate indifference to prolonged, unnecessary pain can itself be the basis for an Eighth Amendment claim. This, too, is correct.”).
Second, the majority mentions that Pet-ties was exempted from walking to meals, and prescribed pain medication, an anti-inflammatory, and crutches, and that Dr. Carter ordered an urgent referral for an MRI and an appointment with an orthopedist. It finds that “[t]his meaningful and ongoing treatment” of Petties’s injury could not constitute deliberate indifference. First, I note that the referral tells us nothing about whether Dr. Carter was deliberately indifferent to Petties’s pain during the seven-week period before Pet-ties was scheduled to receive that MRI. Immobilization was a simple step that Dr. Carter could have taken to ease Petties’s pain during the interim. Also, Dr. Carter could have expedited the referral so that Petties would not have to wait seven weeks, but he did not.
More importantly, the “receipt of some medical care does not automatically defeat a claim of deliberate indifference.” Edwards v. Snyder, 478 F.3d 827, 831 (7th Cir.2007). A prisoner is not required to show that a doctor completely ignored his pain, but instead a doctor’s choice of the easier and less efficacious treatment for an objectively serious medical condition can amount to deliberate indifference. Berry, 604 F.3d at 441. Deliberate indifference may occur where a prison official, having knowledge of a significant risk to inmate health or safety, administers “blatantly inappropriate” medical treatment. Edwards, 478 F.3d at 831. Although Petties received some medical attention, he is not required to show that he was “literally ignored” to prevail on his Eighth Amendment claim. Sherrod v. Lingle, 223 F.3d 605, 611 (7th Cir.2000). This is because “[i]f all the Eighth Amendment required was that prison officials provide some ‘immediate and ongoing attention,’ they could shield themselves from liability (and save considerable resources) by shuttling sick or injured inmates to perfunctory medical appointments wherein no meaningful treatment is dispensed.” Perez v. Fenoglio, No. 12-3084, 792 F.3d 768, 777, 2015 WL 4092294 at *4 (7th Cir. July 7, 2015). But “the responsibilities imposed by the Constitution are not so easily avoided.” Id. In many ways, this case is similar to Berry where we reversed summary judgment for the prison official defendants where a doctor and nurse gave an inmate pain medication and other directions for minimizing pain, but would not provide the more effective treatment, a referral to a dentist. Immobilization was needed to prevent Petties from experiencing severe pain whenever the ankle moved. The ineffective treatment provided here should not shield Dr. Carter from, at a minimum, facing a jury to determine whether he acted with deliberate indifference.
Third, the majority suggests that Dr. Carter’s failure to immobilize Petties’s ankle was somehow a difference of medical judgment, without using such words. It notes that Dr. Carter “did not employ a splint initially because he believed that giving Petties crutches and minimizing his time on his feet was an effective treatment plan.” But this testimony is at odds with Dr. Carter’s own testimony that the appropriate treatment for a complete Achilles tear is to immobilize the ankle with a boot and also ensure that the patient was not putting weight on the ankle. A failure to exercise medical judgment when making a treatment decision violates the Eighth Amendment. Roe v. Elyea, 631 F.3d 843, 863 (7th Cir.2011). Also, when a doctor’s *696 decision is so far from accepted professional judgment, practice, or standards that it demonstrates that his decision was not based on medical judgment, deliberate indifference may be inferred. See McGee v. Adams, 721 F.3d 474, 481 (7th Cir.2013); King v. Kramer, 680 F.3d 1013, 1018-19 (7th Cir.2012); Johnson v. Doughty, 433 F.3d 1001, 1013 (7th Cir.2006). A jury could conclude that the treatment provided here was blatantly inappropriate and so far afield from accepted professional judgment that it did not represent a medical decision at all.
Whether a prison official had the requisite knowledge of a substantial risk is a fact question that can be demonstrated by drawing an inference from circumstantial evidence. Walker v. Peters, 233 F.3d 494, 498 (7th Cir.2000). “For example, a fact finder could conclude that the official was aware of the substantial risk from the very fact that the risk was obvious.” Id. at 498-99 (citing Farmer v. Brennan, 511 U.S. 825, 842, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). Where symptoms plainly call for a particular medical treatment (for example, the leg is broken, so it must be set), a doctor’s deliberate decision not to furnish the treatment is actionable. Id. at 499. Here, a reasonable jury could conclude that Petties’s symptoms plainly called for a particular medical treatment. That is because every doctor that testified in this case has agreed that a ruptured Achilles tendon should be immobilized. Wexford’s own protocol called for immobilization. And crutches do not prevent the ankle from moving, which causes pain.
Dr. Carter’s testimony that he did not employ a splint initially because he believed that giving Petties crutches and minimizing his time on his feet was an effective treatment plan conflicts with his own testimony that treatment for an Achilles rupture typically includes immobilizing the ankle and Dr. Puppala’s and Dr. Chmell’s testimony that they would always immobilize (absent circumstances that are not present here). A reasonable jury could conclude that Dr. Carter’s statement that he believed crutches was an effective treatment plan was a post hoc rationalization, not a statement that Dr. Carter exercised medical judgment at the time he treated Petties, to not provide a splint or boot. And Dr. Carter did not recall whether he referenced Wexford’s treatment guidelines at the time he treated Petties. By giving no explanation at all for not following the protocol, Dr. Carter has opened himself up to a jury finding that he deliberately failed to treat Petties in such a way that he would likely aggravate Petties’s injury.
B. Dr. Obaisi
I believe that construing the record in the light most favorable to Petties, a jury could find that Dr. Obaisi was deliberately indifferent when he refused to order physical therapy despite the ankle specialist’s recommendation that Petties receive physical therapy two to three times a week. Failure to follow the advice of a specialist or treating physician may constitute deliberate indifference. See Gil v. Reed, 381 F.3d 649, 663-64 (7th Cir.2004) (allegation that prison doctor prescribed medication to inmate that specialist warned against gave rise to genuine issue of material fact precluding summary judgment, even though the doctor had an explanation for his alternate course of action); Jones v. Simek, 193 F.3d 485, 491 (7th Cir.1999) (fact that doctor denied inmate medical care for a period of time and thereafter refused to provide specific treatments that were order for the inmate was sufficient to survive motion for summary judgment). Dr. Obaisi has never said in this litigation that he disagreed with Dr. Chmell’s recommendation. Rather, at his deposition, he first asserted that authorizing physical *697 therapy would have been unnecessary because Petties could do “the same exercises” he learned when he tore his right Achilles tendon a couple years earlier. Yet, when pressed, Dr. Obaisi was forced to admit that he did not even know if Petties had received physical therapy for his previous injury. Worse, he could not recall instructing Petties to perform physical therapy exercise appropriate for a torn Achilles tendon and the medical file does not reflect that such a discussion took place. Failing, without medical justification, to follow Dr. Chmell’s recommendation, despite the availability of a physical therapist at the prison, could constitute deliberate indifference. See Gil, 381 F.3d at 663.
The majority does not attempt to justify Dr. Obaisi’s decision not to provide physical therapy for Petties (presumably because it is obvious that there is no justification). Instead, it focuses on the totality of Petties’s care and concludes that Dr. Obaisi’s “treatment” was not so contrary to accepted professional standards that a jury could infer that it was not based on medical judgment. First, much of the “care” the majority cites occurred before Dr. Obaisi became the medical director, so it is unclear how these acts could be considered part of Dr. Obaisi’s “treatment.” Also, as mentioned, an inmate does not need to show that he was literally ignored. If the treatment provided was perfunctory and less efficacious, then a decision to provide such treatment can still constitute deliberate indifference. Berry, 604 F.3d at 441. Our totality of the inmate’s care analysis shows that where an inmate complains of a few isolated incidents of delay or neglect during a course of treatment, but the record as a whole shows that the defendant did not disregard a serious medical risk because he provided meaningful treatment throughout the inmate’s recovery, then the defendant has not acted with deliberate indifference. See Walker, 233 F.3d at 501; Dunigan ex rel. Nyman v. Winnebago Cnty., 165 F.3d 587, 591 (7th Cir.1999); Gutierrez v. Peters, 111 F.3d 1364, 1375 (7th Cir.1997). That is not the case here. Permitting Petties to use a lower bunk and avoid walking around the prison cannot excuse a failure to provide actual medical treatment for the injury. In July 2012 — over two years after Pet-ties’s injury — Petties’s tendon had only partially healed and he had diminished strength. In November 2012, Dr. Obaisi noted in Petties’s medical file that he was in chronic pain from the injury. These are not signs of a reasonable provision of total care. His injury should likely have been completely healed much sooner and he should not have been in pain nearly three years afterwards.
I think it is worth examining Dr. Obai-si’s testimony just to' see how readily a reasonable jury could infer that Dr. Obaisi was deliberately indifferent to Petties’s injury. When determining whether a doctor’s treatment plan is appropriate, the court must focus on what the doctor knew at the time of treatment. Duckworth v. Ahmad, 532 F.3d 675, 680 (7th Cir.2008). Deliberate indifference can be inferred from a physician’s treatment decision which is so far afield from accepted professional standards as to raise the inference that it was not actually based on a medical judgment. See Norfleet v. Webster, 439 F.3d 392, 396 (7th Cir.2006). Dr. Obaisi knew Petties had a serious ankle injury and that a specialist had recommended physical therapy. At first, Dr. Obaisi claimed that he did not think physical therapy was necessary because Petties’s could perform exercises on his own, but Dr. Obaisi had no apparent knowledge of Pet-ties’s prior ankle injury or any information regarding prior physical therapy. Therefore, when making the decision not to follow Dr. Chmell’s recommendation, Dr. Obaisi was not basing it on a belief that *698 Petties could perform physical therapy exercises on his own. It was not a medical judgment at all. This suspicious testimony could be used to infer deliberate indifference. Then, seeking another justification since his reliance on prior physical therapy was lacking foundation, Dr. Obaisi claimed that he believed walking was physical therapy for a ruptured Achilles tendon. This claim is absurd. It is also not consistent with the medical judgment of the specialist, Dr. Chmell, and Dr. Obaisi testified that he would always defer to the decisions of specialists (yet inexplicably chose not to in Petties’s case):
Counsel: As far as the care and treatment that should be rendered to an Achilles tendon injury you would defer to an orthopedic surgeon?
Dr. Obaisi: Always.
Counsel: And as far as the care and treatment that was suggested or ordered from orthopedic surgeons in this case specifically, you would defer to them?
Dr. Obaisi: Yes.
Common sense dictates that walking on a ruptured Achilles tendon is not the equivalent of twice- or thrice-weekly physical therapy. It falls into this category of treatment decisions so far afield from accepted professional standards that deliberate indifference can be inferred. Failing to exercise medical judgment when making a treatment decision violates the Eighth Amendment. Roe, 631 F.3d at 863. Dr. Obaisi’s decision to not provide Petties with physical therapy was a failure to exercise medical judgment. And the totality of Petties’s care cannot excuse this neglect because the totality itself evinced deliberate indifference.
I would remand this case for further proceedings on Petties’s claims that Dr. Carter was deliberately indifferent by failing to immobilize Petties’s ankle and that Dr. Obaisi was deliberately indifferent by not following Dr. Chmell’s recommendation for physical therapy. For these reasons, I dissent.

. A doctor wrote in his medical records that Petties "believes he can bear weight,” but Petties says that that statement is false. At this stage, we must view the facts in the light most favorable to Petties and draw all reasonable inferences in his favor.

. Obviously, there is evidence from which a reasonable jury could conclude otherwise, but our task at this stage is just to determine whether a reasonable jury could rule in Pet-ties’s favor.