In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 15-2562

CRAIG J. CESAL,

*Plaintiff-Appellant,*

*v.*

SCOTT MOATS,

*Defendant-Appellee.*

———————

Appeal from the United States District Court for the
Central District of Illinois.
No. 1:12-cv-01524-SLD — **Sara Darrow**, *Judge.*

———————

ARGUED NOVEMBER 8, 2016 — DECIDED MARCH 20, 2017

———————

Before WOOD, *Chief Judge*, and POSNER and ROVNER, *Circuit Judges*.

WOOD, *Chief Judge*. While lifting a heavy door at his prison job at the Pekin Correctional Institution on March 21, 2008, Craig J. Cesal heard a "snap" in his back and felt pain in his leg and hip. He promptly sought treatment from the prison's medical staff, but he was dissatisfied with their response. He alleges that he received only a three-year long medical runa-

round during which his pain was ignored. Worse, he says, Pekin's Clinical Director, Dr. Scott Moats, canceled Cesal's insulin prescription in retaliation for Cesal's filing of a complaint about the inadequate care for his back. Without the prescription, Cesal—an insulin-dependent diabetic—was unable to control his blood sugar and consequently suffered additional unnecessary pain and physical harm. He filed a second complaint with the prison about the insulin deprivation.

Cesal ultimately sued Dr. Moats and Dr. Andreas Molina, another Pekin physician, alleging that they exhibited deliberate indifference in the care they gave him. At the screening phase, see 28 U.S.C. § 1915A, the district court identified two claims in Cesal's *pro se* complaint: an Eighth Amendment deliberate-indifference claim regarding his back treatment, and a First Amendment retaliation claim related to the withholding of insulin. The district court granted summary judgment for the defendants on both issues, reasoning that the statute of limitations on his complaints had run and that, in any event, there was no question of material fact that would justify allowing his case to move forward. Cesal appeals only the judgment in favor of Dr. Moats, and so we largely disregard Dr. Molina's role in these events. Although Cesal's allegations are troublesome, we conclude in the end that the district court's judgment must be affirmed.

## I

Because this is an appeal from the grant of summary judgment, our review is *de novo*. *Conley v. Birch*, 796 F.3d 742, 746 (7th Cir. 2015). At this stage of the litigation, we assume that the facts alleged by Cesal are true, and we draw all reasonable inferences in his favor. *Dixon v. Cnty. of Cook*, 819 F.3d 343, 346 (7th Cir. 2015). Summary judgment is appropriate when there

are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Between March 21, 2006, and March 28, 2011, Cesal was serving a life sentence at the Pekin Federal Correctional Institution, which is run by the Bureau of Prisons (BOP). There, he worked as a welder—a physically demanding job that required him to move 320-pound doors. He was lifting one such door on Friday, March 21, 2008, when he heard a "snap" in his back and felt sharp pain in his left hip and knee. He immediately sought care at the medical unit, but was told that the facility was closing and instead to report to sick-call on Monday, March 24. He did so, meeting with a nurse that day. By then, Cesal had been given a wheelchair and was temporarily excused from his job. Dr. Moats gave him a verbal order for Motrin (the active ingredient of which is ibuprofen) but was not otherwise involved in his treatment that day.

Cesal was next seen by a physician assistant on March 27. Cesal reiterated his report of pain and numbness in his leg and hip. Although he still was using the wheelchair, the physician assistant noted that Cesal had "no difficulties getting up to sit on exam table" and that Cesal displayed normal gait and posture. During the exam, the physician assistant reviewed x-rays of Cesal's back. These x-rays had been taken on March 12, 2008—before Cesal's lifting accident—in response to his earlier reports of hip pain and numbness in his knee and thigh. The physician assistant prescribed Cesal ibuprofen for another ten days.

Dr. Molina saw Cesal at a follow-up appointment on March 31, when Cesal reported having moderate low-back pain and some numbness in his leg. Four days later, on

April 3, the medical staff took an x-ray of Cesal's lumbar spine, which is the area between the rib cage and pelvis. That x-ray showed that Cesal had degenerative joint disease and disc disease, a diagnosis which previously had shown up in a different x-ray. Otherwise it revealed no problems.

The very next day Cesal filed an informal complaint—the first step in the administrative grievance process—about the treatment he was receiving for his back. In this complaint, Cesal reported that he had "acute pain in my hip and knee, also numbness along the front of my thigh" and that he could not "stand or walk for a worthwhile duration." He said that he "ha[d] been to Medical Dept. repeatedly, but examination or care have been denied." Cesal asked for a medical evaluation and appropriate treatment.

His complaint was rejected. On May 6, 2008, Cesal appealed this denial to the Warden—the proper next step for an inmate who is unsatisfied by the response to an informal complaint. Cesal alleged that he had been evaluated only superficially and never seen by a doctor for acute pain in his left hip and knee and numbness in his left thigh. He did not allege back pain. The Warden rejected Cesal's appeal on June 9, 2008, noting that Cesal's medical records indicated that he was receiving appropriate care.

The Warden's denial also noted that medical officials were awaiting the results of a June 4, 2008, MRI of Cesal's lumbar spine. This scan had been requested on April 15, and was approved sometime in the interim. By June 16, 2008, the results were in. The MRI revealed a few problems—mild stenosis (narrowing of the spinal canal) in one spot, and disc degeneration with mild bulging elsewhere without major stenosis.

But this diagnosis did not assuage Cesal's concerns. He appealed the denial of his grievance on June 25, 2008, moving up another rung on BOP's grievance ladder.

Two days after Cesal filed that appeal, on June 27, Dr. Moats saw him in the prison's chronic care clinic for what Cesal describes as a "non-routine visit." As Cesal tells it, Dr. Moats had learned of Cesal's grievance for the treatment of his back issue and was angry. Dr. Moats told Cesal that he would "show him" what providing no medical care looked like, and then abruptly terminated Cesal's prescription for insulin for no medical reason. Cesal is an insulin-dependent Type II diabetic; he had been taking sliding scale insulin. Without insulin, Cesal was left to manage his blood sugar through diet, exercise, and metformin, a prescription drug that Dr. Moats did not cancel, which is commonly used for type II diabetes to control high blood sugar. *Metformin*, WEBMD, http://www.webmd.com/drugs/2/drug-11285-7061/metformin-oral/metformin---oral/details (last visited March 20, 2017). "Metformin works by helping to restore your body's proper response to the insulin you naturally produce. It also decreases the amount of sugar that your liver makes and that your stomach/intestines absorb." *Id.* Cesal skipped meals or went for runs when his blood sugar level got too high. But despite these efforts, Cesal's blood sugar soared. As a result, he felt dizzy and saw stars, and his toenails fell off.

Cesal's back pain also continued to bother him. Dr. Moats requested a consultation for a "back specialist" for Cesal on October 6, 2008; his request was approved about a month later. In the meantime, Cesal appealed his back-pain grievance in accordance with BOP rules; he exhausted this process on November 25, 2008, when his last appeal was denied. He

finally saw the specialist on March 31, 2009, some five months after the visit had been approved. Cesal told the consulting neurologist that his pain was moderate, but he also reported that he usually jogged two or three miles a day. The neurologist recommended no major changes to Cesal's current "conservative" treatment plan and indicated that he did not believe that surgery or steroid injections would help.

On December 23, 2008, after nearly six months without his sliding scale insulin, Cesal filed a second administrative grievance concerning his diabetes treatment. He specifically requested the restoration of his insulin prescription. Again, his grievance and related appeals were denied at each level of the BOP administrative process. The denial dated January 21, 2009, noted that Pekin's clinical director (presumably Dr. Moats) had discussed with Cesal a different diabetes management program that was "tailored to prevent hyperglycemia, not to treat it after it occurs." A subsequent denial from March 6, 2009, noted that Cesal still had oral medication for his diabetes and concluded that "sound clinical judgment is being demonstrated" in Cesal's treatment. Cesal exhausted the prison grievance process for this claim on May 26, 2009, when his final appeal was denied.

Medical records show that Cesal had several visits with Dr. Moats in 2009 and 2010, but Dr. Moats did not re-prescribe him insulin until October 29, 2010. On that date, Dr. Moats prescribed Cesal five units of insulin—half the dosage he had been receiving in June 2008, when his prescription had been cancelled. In the months following the insulin renewal, Dr. Moats stepped up Cesal's dosage incrementally. By February 22, 2011, Cesal was back on the same ten-unit dosage he had received in June 2008.

On March 28, 2011, Cesal was transferred from Pekin to the Federal Correctional Institution in Greenville, Illinois. His back pain worsened, and so he sought treatment there. An October 9, 2012 x-ray of Cesal's *middle* back revealed an old, partial fracture of a vertebra. Cesal attributes this injury to his March 2008 lifting accident, although his medical records show this was just his guess—no medical professional ever concluded as much.

Cesal filed a suit against Drs. Moats and Molina on December 20, 2012,[1] invoking the doctrine of *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971); he amended his complaint three months later. (His suit included other claims against different Pekin officials; because they are not relevant to this appeal, we do not discuss them.) His amended complaint alleged, in relevant part, that Drs. Moats and Molina refused to provide care for his fractured vertebra and that they terminated his insulin prescription after he complained about their lack of care for his back. At screening, see 28 U.S.C. § 1915A, the district court pared down his *pro se* complaint to two counts: an Eighth Amendment claim of deliberate indifference to the back injury, and a First Amendment retaliation claim for withholding the insulin prescription.

The district court granted summary judgment for both defendants on March 24, 2015, reasoning that Cesal filed his lawsuit after the two-year statute of limitations had run—a defense that the defendants promptly raised in that court. It

---

[1] Some of the documents show the filing date as December 17, 2012, and others indicate that it was December 20, 2012. The difference, we assume, is attributable to the mailbox rule. We use December 20, 2012, because it is the date that appears in the district court's docket, and the three-day difference is immaterial for present purposes.

added that even if Cesal's lawsuit was timely, summary judgment was also appropriate because Cesal's evidence showed that at most the defendants were negligent in misdiagnosing his back injury, and there was no evidence supporting his retaliation argument.

## II

Cesal appeals the judgment in favor of Dr. Moats (only) on the two theories the district court identified. He also asserts that the court, on screening, improperly failed to recognize that he had alleged a deliberate-indifference claim regarding his insulin prescription.

## A

We begin with Cesal's challenge to the district court's screening of his *pro se* complaint because that affects the scope of the case that is before us. Cesal argues that the district court erred in the initial screening of his complaint, see 28 U.S.C. § 1915A, when it failed to recognize that he pleaded an Eighth Amendment deliberate-indifference claim regarding his insulin cancellation, in addition to the retaliation claim. We review a dismissal under § 1915A *de novo*, using the standard that applies to ordinary Rule 12(b)(6) dismissals. *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012). We construe *pro se* complaints liberally, holding them to a less stringent standard than pleadings drafted by lawyers. *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015).

Cesal's amended complaint alleged, in relevant part:

> When Cesal complained, through the Administrative Remedy Procedure, about the lack of care, the requisite policy makers would nei-

> ther grant nor deny Cesal's request for treatment. Angry regarding the complaint against them, Moats and Molina terminated Cesal's insulin prescription even though Cesal is an insulin-dependent diabetic. …
>
> Cesal continues to endure middle back pain, pain in his hip area, and numbness in his left leg from the spinal injury. His feet are swollen and numb, his vision blurred, and he experiences kidney pain from the lack of adequate diabetes therapy. Moats and Molina violated Cesal's Eighth Amendment right to be free from cruel and unusual punishment when Defendants knew their actions would both inflict pain and cause permanent physical harm. Cesal's First Amendment rights were impinged by the deliberate retaliation and lack of due process regarding his loss.

Prison officials violate the Eighth Amendment's prohibition against cruel and unusual punishment when they act with deliberate indifference to the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). To state a claim for deliberate indifference for deficient medical care, the plaintiff "must allege an objectively serious medical condition and an official's deliberate indifference to that condition." *Perez*, 792 F.3d at 776.

Objectively serious medical needs are those that have either been diagnosed by a physician and demand treatment, or are "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012). For present purposes, Dr.

Moats concedes that Cesal's allegations of kidney pain, vision blurriness, and numbness meet this standard.

The complaint also alleges that Dr. Moats had a sufficiently culpable state of mind. See *Farmer v. Brennan*, 511 U.S. 825, 834, 839–40 (1994). The subjective component requires the plaintiff to allege that the official actually knew of, but disregarded, a substantial risk to the inmate's health. *Id*. at 836–38; *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). A failure to act in the face of an obvious risk of which the official *should* have known is insufficient to make out a claim. *Farmer*, 511 U.S. at 836–38. Cesal's allegation clears that bar because he alleges that Dr. Moats knew that terminating Cesal's insulin would cause him pain, but that he took that step anyway.

Dr. Moats argues that Cesal has failed to state a claim under the Eighth Amendment, but this argument misconstrues Cesal's allegation as one of *subjective* inadequacy. Dr. Moats is correct that the Eighth Amendment does not reach disputes concerning the exercise of a professional's medical judgment, such as disagreement over whether one course of treatment is preferable to another. *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996); see *Estelle*, 429 U.S. at 107. But Cesal has alleged more than this. His complaint accused Dr. Moats of abusing his position as Cesal's care-provider by adjusting his treatment plan with the knowledge that doing so would result in unnecessary pain. This allegation, if true, constitutes deliberate indifference for purposes of the Eighth Amendment.

Having concluded that Cesal properly alleged a deliberate-indifference claim for the insulin withholding, we move to the question whether Dr. Moats was entitled to summary judgment on all three theories.

B

We begin with Cesal's back pain. The district court granted summary judgment for Dr. Moats on this part of the case for two reasons: first, because the statute of limitations had run; and second, because Cesal failed to present facts that would have permitted a jury to find in his favor. We may affirm based on any properly preserved ground. *Hester v. Ind. State Dep't of Health*, 726 F.3d 942, 946 (7th Cir. 2013).

1

We begin with the statute of limitations. Cesal argues that the district court miscalculated the date by which he needed to file his *Bivens* action against Dr. Moats because it failed to appreciate the ongoing nature of his injury. He is correct.

The statute of limitations for *Bivens* claims against federal officers is the same as for § 1983 actions against state officers: both periods are borrowed from the state in which the alleged injury occurred. *King v. One Unknown Fed. Corr. Officer*, 201 F.3d 910, 913 (7th Cir. 2000). In this case, Cesal's injury took place in Illinois, which has a two-year statute of limitations. 735 ILCS 5/13-202. Although Cesal injured his back on March 21, 2008, he could not bring suit until he exhausted the prison grievance process. 42 U.S.C. § 1997e(a); see also *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (noting that federal prisoners suing under *Bivens*, like state prisoners suing under § 1983, must exhaust inmate grievance procedures before they can file their suit). The district court concluded that the limitations period was tolled while Cesal pursued the grievance. See *Walker v. Sheahan*, 526 F.3d 973, 978 (7th Cir. 2008) (limitations period for a § 1983 action is tolled while the prisoner completes the administrative grievance process). And so, by the

district court's calculation, Cesal needed to file his claim by November 25, 2010, two years after his back grievance was finally denied.

But this calculation does not take into account the ongoing nature of Cesal's injury. When a plaintiff alleges that inaction is leading to an ongoing harm, he can "reach back to its beginning even if that beginning lies outside the statutory limitations period, when it would be unreasonable to require or even permit him to sue separately over every incident of the defendant's unlawful conduct." *Heard v. Sheahan*, 253 F.3d 316, 319 (7th Cir. 2001). In these cases, "it would be unreasonable to require or even permit [the prisoner] to sue separately over every incident of the defendant's unlawful conduct." *Id*. The statute of limitations thus "starts to run (that is, the cause of action accrues) from the date of the last incidence of that violation, not the first." *Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013); see also *id*. at 654 (Easterbrook, J., concurring).

Cesal was not required to sue until after the unlawful conduct ended. But Cesal says it never ended while he was at Pekin; he alleges that Dr. Moats's deliberate indifference ended only on March 28, 2011, when Cesal was transferred to Greenville and thus out of Dr. Moats's care. We conclude that summary judgment on statute of limitations grounds for Cesal's back claim was not appropriate.

2

Next is the question whether Cesal presented enough to raise a genuine issue of material fact, again with respect to his back injury. Cesal contends that a reasonable jury could find that Dr. Moats was deliberately indifferent to his back injury from the facts he was able to collect. A prison official acts with

deliberate indifference when he knows of and disregards an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 837. The plaintiff must show that the defendant acted or failed to act in a way that disregarded an excessive risk of harm to the inmate; he does not need to show that the defendant intended or desired to cause harm. *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002). Intentional delays in medical care may constitute deliberate indifference, even if the inmate's medical condition is non-life threatening. *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011). A doctor's choice of "easier and less efficacious treatment" for an objectively serious medical condition also may be sufficient. *Estelle*, 429 U.S. at 104 & n. 10. But "mere disagreement with a doctor's medical judgment" is not enough to support an Eighth Amendment violation. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010).

Our review of the undisputed facts in the record convinces us that no reasonable trier of fact could find that Dr. Moats was deliberately indifferent to Cesal's back pain. Although no doctor examined Cesal on the afternoon of the accident, he was excused from his job and was given a wheelchair after he reported that his pain was getting worse. Cesal saw a nurse on Monday, March 24, and he then saw a physician assistant on March 27. He also received medication for his pain. In other words, he was under active treatment; no one was ignoring him. See *Perez*, 792 F.3d at 777 ("Prison officials must provide inmates with medical care that is adequate in light of the severity of the condition and professional norms.").

Importantly, there is no indication that Dr. Moats was personally involved in Cesal's early care. Dr. Moats could not have acted with the subjective intent that a deliberate indifference claim requires if he was not aware of a risk of a harm to

Cesal. See *Farmer*, 511 U.S. at 838–39. While Cesal alleges that
Dr. Moats refused to see him in the days immediately follow-
ing his March 21, 2008 accident, no evidence substantiates
that allegation, nor is there any reason in this record to think
that starting with the physician assistant and nurse was not a
reasonable step. Cesal acknowledges that Dr. Moats never
treated him before June 27, 2008, the day the doctor termi-
nated Cesal's insulin prescription. In any event, a prison offi-
cial's refusal to indulge an inmate's request to see a specific
staff member, when the prisoner is receiving care from other
members of the medical staff, is not deliberate indifference.

Cesal continued to receive appropriate care in the months
that followed his accident. This care included an x-ray of his
back, taken just two weeks after his lifting accident, and an
MRI of his lumbar spine on June 16, 2008. Dr. Moats also suc-
cessfully arranged for an outside consult. Cesal writes off
these measures because they did not target his middle back,
where his fractured vertebra was located, but he ignores the
fact that he failed for many months to identify his middle back
as the source of his pain. Initially Cesal complained only of
pain in his left hip, knee, and thigh. His initial prison griev-
ance said nothing about back pain. Cesal also denied having
*any* back pain in a September 17, 2008 appeal of his grievance
in which he questioned the reason for the MRI. As he con-
cedes in his brief to this court, Dr. Moats may not have been
aware of any middle back pain until November 29, 2009, the
date on which Dr. Moats's exam notes reflect that Cesal had
reported middle back pain. Although Cesal's leg and hip pain
may have stemmed from a spinal injury, Cesal's inability to
provide any relevant details precludes a factfinder from con-
cluding that Dr. Moats was deliberately indifferent. Dr. Moats

could not have disregarded Cesal's middle back injury if he was not aware of it.

To be sure, the rendering of *some* medical care does not necessarily disprove deliberate indifference; the treatment rendered may be so blatantly inappropriate that it can support an inference of intentional mistreatment. See *Petties v. Carter*, 836 F.3d 722, 731 (7th Cir. 2016) (en banc); *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007). Continuing an ineffective treatment plan also may evidence deliberate indifference. See *Berry*, 604 F.3d at 441–42. But no trier of fact could find that Dr. Moats's treatment of Cesal was blatantly inappropriate. The consulting neurologist recommended that the Pekin staff continue Cesal's "conservative" treatment; he believed that more extreme measures, such as steroids or surgery, would be ineffective. Cesal also told the consulting physician that he was jogging two or three miles a day, despite his report of moderate pain. That is a marked improvement from the days after Cesal's accident, when he needed a wheelchair.

The fact that Dr. Moats "never diagnosed Mr. Cesal's broken spine," as Cesal argues, does not push this over the line. Deliberate indifference requires more than evidence of negligence or medical malpractice. See *Estelle*, 429 U.S. at 106; *McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013). Cesal's dissatisfaction with Dr. Moats's medical judgment and care is insufficient to survive summary judgment. See *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662–63 (7th Cir. 2016).

C

That brings us to Dr. Moats's withholding of insulin, which forms the basis for both Cesal's retaliation theory and

his deliberate indifference theory. With respect to the former, the district court assumed that the withholding of insulin described a violation that existed as long as the medication was withheld. (This was not a single injury that accrued when Cesal first lost his insulin; each new day brought with it new injury, and a new violation.) Accordingly, the court concluded that the limitations period began to run on October 29, 2010, the day when Dr. Moats restored the prescription, though at the reduced, five-unit, level. Cesal filed his suit on December 20, 2012, well more than two years after that date, and this was too late in the court's view. If October 29, 2010, is the correct starting point, Cesal cannot prevail. Dr. Moats did not waive his right to rely on the statute of limitations, and we are aware of no rule of law that would entitle us to strip him of that defense on our own. Cesal has not argued otherwise, either in the district court or in this court. Instead, he contends that his insulin problem was not solved until February 22, 2011, when Dr. Moats finally restored Cesal's insulin prescription to ten units—the same amount he had been prescribed back in 2008.

Because we must take Cesal's allegation as true at the summary judgment stage, we disregard Dr. Moats's explanation of the cancellation as his attempt to manage Cesal's blood sugar using a different, proactive method. Indeed, we are troubled by Dr. Moats's cancellation of Cesal's insulin and his failure to prescribe *any* insulin—whether sliding scale, or otherwise—for nearly 2 ½ years. We conclude, however, that for purposes of both retaliation and deliberate indifference, the critical date is October 29, 2010, when Dr. Moats put Cesal back on the reduced insulin dose.

Cesal's argument assumes, without any basis, that there is a fixed, "correct" dosage of sliding-scale insulin for his diabetes. There is no evidence that this is true, either generally or for Cesal himself. All he has managed to do is to register disagreement with Dr. Moats's medical judgment. That is insufficient to prove deliberate indifference, *Berry*, 604 F.3d at 441, or any retaliatory motive.

If Cesal had given us some reason to think that Dr. Moats knew that the five-unit dosage would be ineffective, we would have a different case. The Eighth Amendment protects against a physician's persistence with a course of treatment that he knows will be ineffective, *id*. at 441, as well as a treatment decision that is "so far afield of accepted professional standards" that a jury could find it was not the product of medical judgment. *Duckworth v. Ahmed*, 532 F.3d 675, 679 (7th Cir. 2008). But Cesal has not pointed to any evidence that would permit a factfinder to conclude that Dr. Moats knew that five units would be inadequate in controlling Cesal's blood sugar or that the prescription was wildly out of line with professional standards. Indeed, Cesal's medical records from Greenville support the opposite inference: officials there repeatedly adjusted Cesal's insulin prescription, and at one point lowered it to five units.

Cesal's contention that the five-unit prescription was insufficient cannot extend the length of the violation. He needed to file suit within two years of October 29, 2010—the day Dr. Moats again prescribed him insulin. Either as of that date or very shortly afterwards, he knew that he was dissatisfied with the new dose. It is not too much to ask that he file suit within two years of the date when his insulin was partially restored, and after filing, ask the district court to appoint the kind of

medical expert our dissenting colleague thinks should have been recruited. But Cesal did not file until December 20, 2012, more than two years after the restoration. This was almost two months too late. Summary judgment in favor of Dr. Moats was thus proper for both the deliberate indifference and the retaliation claims based on the insulin deprivation.

## III

This case illustrates yet again the important difference between ordinary, or even aggravated, medical malpractice, and an Eighth Amendment violation. Our task is not to resolve whether Cesal's care—especially the cancellation of his insulin—was appropriate. We must instead apply both the statutes of limitations that apply to *Bivens* claims such as this one and the underlying constitutional standards. Doing so, we see no error in the district court's judgment, and so we AFFIRM.

POSNER, *Circuit Judge*, dissenting. This case is indistinguishable from *Rowe v. Gibson*, 798 F.3d 622 (7th Cir. 2015), which reversed a grant of summary judgment for the defendants in a state prisoner's suit for deliberate indifference to his medical needs and remanded for a closer look, with a strong exhortation to the district judge to recruit a lawyer for Rowe and, if necessary by invoking Rule 706 of the Federal Rules of Evidence, an expert witness for him as well. Lacking these aids, Rowe had been incapable of proving that the prison medical staff, mainly his treating physician, had gravely endangered his health by failing, seemingly out of spite, to provide him with the medicine that he needed for treatment of his potentially fatal gastroesophageal reflux disease. This case involves a similar claim of misconduct by prison medical staff, specifically (as in *Rowe*) the plaintiff's treating physician, Dr. Scott Moats.

To quote from the majority opinion (with minor alterations for clarity):

"As Cesal tells it, Dr. Moats had learned of Cesal's filing of a grievance concerning Moats's treatment of Cesal's back injury, and the grievance had made Moats angry with Cesal. Telling Cesal he'd 'show him' what providing no medical care looked like, Moats terminated Cesal's prescription for insulin—seemingly for no medical reason.

"Cesal is an insulin-dependent Type II diabetic who had been taking sliding-scale insulin [whereby the size of the insulin dose is based on the patient's blood-sugar level just before his meal; the higher the level, the more insulin the patient takes]. Without insulin Cesal was left to try to manage his blood-sugar level through diet, exercise, and the diabe-

tes-management drug metformin, which Moats had not canceled. Cesal skipped meals or went for runs when his blood-sugar level got too high. But despite these efforts and the metformin, his blood sugar soared. As a result he felt dizzy and saw stars and his toenails fell off. …

"On December 23, 2008, after nearly six months without insulin, Cesal filed a second administrative grievance concerning his diabetes treatment, specifically requesting the restoration of his sliding-scale insulin prescription. Again his grievance and related appeals were denied at each level of the BOP [Bureau of Prisons] administrative process. A denial dated January 21, 2009, noted that the clinical director (Dr. Moats) of the prison [Pekin Correctional Institution] had discussed with Cesal a different diabetes-management program, one 'tailored to prevent hyperglycemia [high blood sugar—a hallmark sign of diabetes], not to treat it after it occurs.'" This meant that rather than following a sliding-scale insulin regime, in which Cesal would check his blood sugar before meals and take insulin if his blood sugar had risen to a high level, he would once or twice each day at the same time or times take a long-lasting form of insulin that would prevent his blood-sugar level from rising throughout the day.

But were prison officials—Moats in particular—*really* putting Cesal on that program, given the sudden cancellation of his old prescription, the delay in writing him a new one, and his allegation that Moats was retaliating against him? Although a subsequent denial of his grievance, on March 6, 2009, noted that he was taking oral medications (but not insulin) for his diabetes, and concluded that "sound clinical judgment is being demonstrated" in his treatment,

how can we be confident that Moats was demonstrating "sound clinical judgment"? The doctor's anger, the sudden withdrawal of all insulin, and the long delay before its restoration, make this case sound a lot like *Rowe v. Gibson*.

Even the judges in the majority in this case acknowledge being "troubled by Dr. Moats's cancellation of Cesal's insulin and his failure to prescribe *any* insulin—whether sliding scale, or otherwise—for nearly 2½ years." Yet the majority retract their concern, dismissively, with the remark that "Cesal's argument assumes, without any basis, that there is a fixed, 'correct' dosage of sliding-scale insulin for his diabetes. There is no evidence, however, that this is true, either generally or for Cesal himself. All he has managed to do is to register disagreement with Dr. Moats's medical judgment. That is insufficient to prove deliberate indifference."

But what does the majority expect of Cesal, a prisoner who had no lawyer and no witnesses, let alone an expert witness? What more could he do than "register disagreement"?

The majority opinion attaches decisive significance to the two-year statute of limitations applicable to the case, which according to the opinion expired before Cesal filed his suit. The purpose of statutes of limitations is to protect defendants from being sued after the evidence on which their defense would depend has disappeared, and there is no indication that the government would be prejudiced in this case by our waiving the statute of limitations. Cesal argues plausibly that Dr. Moats' deliberately indifferent treatment of his diabetes continued until February 22, 2011, the date on which Moats restored the full insulin prescription—and that was a date *within* the statute of limitations. Although Moats had

prescribed insulin for Cesal—albeit a reduced dose—on October 29, 2010 (almost two years after Cesal had filed his grievance complaining about the cancellation of his insulin), Cesal argues that Moats must have known that the reduced dose was inadequate, because Cesal's blood-sugar levels had become severely elevated, probably as a result of Moats' having withheld insulin from Cesal for that long period.

The argument for waiving the statute of limitations is strengthened by the fact that Cesal was unrepresented in the district court. For all we know, he's never heard of statutes of limitations. He has made a plausible case of deliberate indifference by Dr. Moats to an acute medical need. I would reverse the judgment in favor of the defendant and remand the case for an evidentiary hearing, with a strong suggestion that the district judge recruit a lawyer for Cesal and, pursuant to Rule 706 of the Federal Rules of Evidence, appoint a neutral expert witness—a specialist in diabetes and its treatment—as well.