**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 30, 2018[*]
Decided September 6, 2018

*Before*

DIANE S. SYKES, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 17-2845

| | |
|---|---|
| PHILIP SEBOLT, <br>     *Plaintiff-Appellant,* | Appeal from the United States District Court for the Southern District of Indiana, Terre Haute Division. |
| *v.* | No. 2:15-cv-00353-WTL-MPB |
| CHARLES SAMUELS, JR., et al., <br>     *Defendants-Appellees.* | William T. Lawrence, <br> *Judge.* |

**O R D E R**

Philip Sebolt, formerly an inmate at the Federal Correctional Institution in Terre Haute, has sued the Bureau of Prisons for denying him access to its electronic mail program. He contends that the prohibition violates his right to free speech under the First Amendment, as well as his right to counsel and access to courts under the Sixth Amendment. The district judge dismissed the complaint for failure to state a claim,

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

explaining that Sebolt's exclusion from the program was reasonably related to legitimate penological interests. *See Turner v. Safley*, 482 U.S. 78, 89–91 (1987). We agree with that reasoning and affirm the judgment.

The Bureau's email program, the Trust Fund Limited Inmate Computer System (TRULINCS), allows inmates to send and receive electronic mail through a monitored, computer-based platform. Because the Bureau considers the program a "privilege," its regulations permit wardens to exclude from the program inmates "whose offense, conduct, or other personal history indicates a propensity to offend through the use of email" or whose access could "jeopardize[] the safety, security, orderly operation of the correctional facility, or the protection of the public or staff." BUREAU OF PRISONS, PROGRAM STATEMENT § 4500.11 at 14.2, 14.9(a)(1).

When Sebolt arrived at Terre Haute, the Bureau denied him access to the email program because a staff member decided that Sebolt's use of it "could jeopardize legitimate penological interests." The officer cited Sebolt's criminal history; Sebolt was convicted of using a computer to commit federal crimes involving child pornography, *see United States v. Sebolt*, 460 F.3d 910 (7th Cir. 2006), and for advertising child pornography over the prison's mail system while incarcerated, *see United States v. Sebolt*, 554 F. App'x 200 (4th Cir. 2014). This history led the officer to conclude that Sebolt might use the program for nefarious purposes. Even though the Bureau denied him email access, Sebolt still could use the prison's regular mail system and could make two telephone calls per week. Moreover, even if Sebolt had access to the email program, the only way that he could communicate confidentially with his attorneys was through regular mail or telephone, as all email correspondence is monitored. BUREAU OF PRISONS, PROGRAM STATEMENT § 4500.11 at 14.3(d).

Sebolt responded by suing the Bureau and some of its staff under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). He alleges that because he cannot use email, he cannot read publications available only through TRULINCS (thereby violating the First Amendment) and cannot communicate properly with his attorney (thus violating the Sixth Amendment). The defendants submitted the Bureau's regulations governing the email program. Relying on the program's "safety and security" rationale, the court dismissed Sebolt's claims, reasoning that the policy and its application to Sebolt were reasonably related to legitimate penological interests.

We review the dismissal de novo and construe Sebolt's pro se complaint liberally, *see Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017), but we first address two preliminary matters. To begin, Sebolt relies on *Bivens* to sue the Federal Bureau of Prisons in its official capacity. But a *Bivens* action must be brought against federal *agents* personally; it does not extend to a federal *agency*. *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 72 (2001); *FDIC v. Meyer*, 510 U.S. 471, 484–86 (1994).

Second, Sebolt charges the individual defendants with violating the First and Sixth Amendments, but the Supreme Court has not yet declared these violations actionable under *Bivens*. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (remarking that Supreme Court has "declined to extend *Bivens* to a claim sounding in the First Amendment"); *see also Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857–58 (2017) (creating new *Bivens* action is "strongly disfavored"). Even so, we will assume that a *Bivens* action under these amendments is available to Sebolt, *see Iqbal*, 556 U.S. at 675, because his complaint does not state a plausible claim for relief anyway.

Sebolt does not have an unrestricted First or Sixth Amendment right to receive publications or consult with counsel by electronic mail. A prison's decision to restrict an inmate's rights under these amendments is permissible so long as it reasonably relates to legitimate penological interests. *See Turner*, 482 U.S. at 89–91. We consider "whether the regulation has a 'valid, rational connection' to a legitimate governmental interest; whether alternative means are open to inmates to exercise the asserted right; what impact an accommodation of the right would have on guards and inmates and prison resources; and whether there are 'ready alternatives' to the regulation." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (quoting *Turner*, 482 U.S. at 89–91)). The first of these four factors (the rational connection to a legitimate interest) is the principal factor. *See Riker v. Lemmon*, 798 F.3d 546, 553 (7th Cir. 2015).

The policy that the Bureau applied to Sebolt—of keeping inmates with a propensity to use email to commit crimes from using email—is rationally related to the Bureau's legitimate penological concerns. The security of the prison and the public is a valid penological goal, and a prison's regulations designed to achieve that goal are subject to substantial deference. *See Pell v. Procunier*, 417 U.S. 817, 827 (1974); *see also Hammer v. Ashcroft*, 570 F.3d 798, 801 (7th Cir. 2009) (en banc) (recognizing "security" as legitimate justification for limiting face-to-face interviews between press and prisoners).

Sebolt first argues, incorrectly, that a court may never dismiss at screening a constitutional challenge to a prison rule. *See Munson v. Gaetz*, 673 F.3d 630, 634–35 (7th Cir. 2012) (dismissing First Amendment challenge to prison regulation at screening). He next contends that, because the Bureau monitors all email exchanges for security purposes, the prison's policy of excluding from the program those inmates with a propensity to abuse email is not needed. But monitoring emails to detect abuse imposes costs on the prison. And those costs increase when the users are likely to abuse the system because the prison must then scrutinize their emails more carefully. Prisons have a legitimate interest in limiting the costs of detecting unlawful communications between inmates and outsiders. *See Jackson v. Frank*, 509 F.3d 389, 391–92 (7th Cir. 2007) (ruling that prison officials are constitutionally permitted to save resources by limiting types of communications staff must process). So the Bureau's policy of keeping potential email abusers from using its email system is rationally related to its legitimate security interests.

Sebolt responds that, even if the policy is valid in general, the Bureau has irrationally applied it to him. But the rationality of applying the policy to Sebolt is apparent from the allegations of his complaint. Sebolt acknowledges that he has been convicted of using computers to commit child-pornography crimes and using the prison's mail system to continue his criminal conduct. It "takes no imaginative dive" to understand the link between safety and limiting certain inmates like Sebolt, with a history of using computers and mailings to commit crimes, from using email. *Munson*, 673 F.3d at 634–35.

The remaining three *Turner* factors also justify dismissal of the suit. Sebolt has alternative means of exercising his First and Sixth Amendment rights. He may use the regular mail to obtain similar periodicals and the telephone to communicate with his attorney. *See Singer v. Raemisch*, 593 F.3d 529, 539 (7th Cir. 2010); *see also Beard v. Banks*, 548 U.S. 521 (2006) (ruling that policy limiting inmates' access to newspapers and magazines did not violate First Amendment, even though no alternative existed). Indeed, Sebolt's only means of communicating confidentially with his counsel are through mail and telephone because, as he concedes, the email system is monitored. Sebolt replies that regular mail and phone calls are more restrictive than email, but prison officials are not required to choose the least restrictive option when enacting a policy. *Thornburgh v. Abbott*, 490 U.S. 401, 411 (1989); *see also Hammer*, 570 F.3d at 801 (rejecting argument that prisons "must use the least-restrictive available options"). He also worries that the policy limits his access to non-confidential legal advice, like the

law newsletters that are available only on the email platform. The *Turner* analysis, however, does not invalidate a policy just because it restricts one of many forms of legal assistance. *See Shaw v. Murphy*, 532 U.S. 223, 230 (2001).

Finally, Sebolt has not identified an "obvious, easy alternative" to the email program that would allow likely email abusers to use email without adding to the prison's monitoring costs. *See Van den Bosch v. Raemisch*, 658 F.3d 778, 791 (7th Cir. 2011) (quoting *Turner*, 482 U.S. at 90). Because the *Turner* factors all favor the Bureau, the restriction is sound.

AFFIRMED