NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 30, 2019[*]
Decided June 4, 2019

**Before**

DIANE P. WOOD, *Chief Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 18-2553

| | |
|---|---|
| DELBERT HEARD, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 14-cv-1027-JBM |
| ANDREW TILDEN, WEXFORD HEALTH SOURCES, INC., and LOUIS SHICKER, *Defendants-Appellees.* | Joe Billy McDade, *Judge.* |

**O R D E R**

Delbert Heard, an Illinois inmate, sued prison medical providers under 18 U.S.C. § 1983 for deliberate indifference to his recurrent inguinal hernia (a hernia in the groin). He argued that the prison doctor violated his Eighth Amendment rights by recklessly failing to test for the hernia, which unnecessarily prolonged his pain and delayed corrective surgery. The other defendants, he claimed, unlawfully enabled this. The

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

district court entered summary judgment for the defendants. Because a reasonable jury could not conclude that any of the defendants was deliberately indifferent to Heard's hernia, we affirm.

We construe the undisputed facts in the light most favorable to Heard, the party opposing summary judgment. *See Greeno v. Daley*, 414 F.3d 645, 648 (7th Cir. 2005). Heard saw Dr. Andrew Tilden in April 2011 and complained of pain that Heard believed was attributable to a reducible hernia. (A hernia surgeon deposed for this case defined a reducible hernia as one in which part of the intestine "moves back and forth [through the abdominal wall] when you cough.") Heard had a history of inguinal hernias and required emergency surgery years earlier to repair one. Dr. Tilden noted Heard's medical history but reported "no obvious" hernia. He instead diagnosed Heard with an "asymptomatic" hydrocele (scrotal swelling) and prescribed painkillers. Heard, however, refused the medication out of concern that it would dull his sensitivity to the acute pain that precedes strangulation of the intestine—the complication that triggered his emergency surgery years before.

Heard maintains that at this appointment, Dr. Tilden did not perform the standard "cough impulse test" to assess whether he had a hernia, and instead merely "eyeballed" him. Dr. Tilden does not remember performing the test but stated in his deposition that he "would have" done it in response to Heard's complaints because a proper hernia examination is "not only visual." The cough test is "any physician['s] routine examination for [an] inguinal hernia," Dr. Tilden added, and is "taught in … medical school."

Heard again visited health services eight months later complaining of variable pain that was sometimes triggered just by walking. This time, a physician's assistant performed the cough impulse test and diagnosed a reducible inguinal hernia on his left side. The physician's assistant prescribed painkillers and ice and advised Heard to stop lifting weights. Heard again refused to take the painkillers. A few days later, Heard visited Dr. Tilden and insisted that he had a hernia on his left groin requiring surgery, but Dr. Tilden noted that "no hernia [was] palpable." (Heard maintains that "palpable," referred to Dr. Tilden's observation that Heard's hernia did not visibly bulge—i.e. it was reduced during the appointment.) Dr. Tilden again failed to perform the cough impulse test during this visit, Heard states.

Heard's pain worsened and he repeatedly sought treatment for it. He wrote to Dr. Louis Shicker, the medical director of the Illinois Department of Corrections, requesting surgery. Dr. Shicker denied Heard's request, explained he had no

"independent knowledge" of his condition, and directed him to submit a grievance if he objected to his care. Following an unsuccessful grievance process, Heard wrote twice to the Governor's Office of Citizen's Assistance, requesting surgery. That office forwarded the letters to Dr. Shicker, who again denied Heard's requests. In response to the first letter (which is not in the record), Dr. Shicker stated, "[p]er Dr. Tilden, you do not have a hernia problem," only a hydrocele. In his next letter, Heard explained that Dr. Tilden had not performed the cough impulse test and submitted the physician's assistant's note diagnosing his hernia. Dr. Shicker, however, concluded based on the physician's assistant's notes (prescribing ice and painkillers) and the responses to the grievances that the hernia had not "progress[ed] to the point of meeting clinical criteria for surgical repair" but stated that repair would "be authorized" if it became necessary. He further explained that "[e]lective surgery, in general, is not undertaken within IDOC."

Heard visited health services again in October 2012, complaining of pain and stating that his hernia had gotten larger. Dr. Tilden performed the cough impulse test during this visit and diagnosed Heard's hernia. Dr. Tilden ordered an ultrasound and referred Heard to an outside surgeon who repaired the condition. Heard's pain subsided after the surgery.

Heard sued Dr. Tilden, Dr. Shicker, and Wexford Health Sources, Inc. (the prison's medical provider) for deliberate indifference to his pain. He claimed that Dr. Tilden violated his Eighth Amendment rights by failing to perform the cough impulse test until October 2012, thereby delaying Heard's diagnosis and surgery and prolonging his pain for more than a year. Dr. Shicker, he added, failed to intervene. Heard also asserted a claim under *Monell v. Dept. of Soc. Svcs.*, 436 U.S. 658 (1978), against Wexford and Dr. Shicker, challenging what he alleged to be a blanket policy of refusing to authorize elective hernia surgeries.

The district court ultimately granted the defendants' motions for summary judgment. Acknowledging a dispute about whether Dr. Tilden performed the cough impulse test during Heard's first two appointments, the district court concluded that the dispute was immaterial. Dr. Tilden's testimony and the treatment records revealed that Dr. Tilden believed that Heard *did not have* a hernia before October 2012, the court determined, and the doctor could not be liable for a misdiagnosis. As for Dr. Shicker, the court determined that nothing in the record showed that he should have known that Heard needed hernia surgery before October 2012. Dr. Shicker, therefore, could not be deliberately indifferent for denying surgery before then. Finally, the court ruled that

Heard's *Monell* claim failed because he had not established an underlying Eighth Amendment violation.

On appeal, Heard argues that a jury could conclude that Drs. Tilden and Shicker were deliberately indifferent to his pain. To survive summary judgment, Heard needed to introduce evidence showing that (1) his medical need was objectively serious, and (2) Drs. Tilden and Shicker consciously disregarded his need for treatment. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (en banc). Even without a corresponding exacerbation of an underlying condition, "deliberate indifference to prolonged, unnecessary pain can itself be the basis for an Eighth Amendment claim." *Smith v. Knox Cty. Jail*, 666 F.3d 1037, 1039–40 (7th Cir. 2012*)*.

Although the district court found that Heard's hernia was an objectively serious condition, Dr. Tilden and Wexford disagree. (Dr. Shicker assumes on appeal that it is.) They assert that Heard's hernia was never objectively serious because it never required *emergency* surgery. But we have acknowledged that a reducible hernia accompanied by chronic pain can be an objectively serious medical problem. *See Gonzalez v. Feinerman*, 663 F.3d 311, 314 (7th Cir. 2011). And Heard's testimony that his pain limited his ability to walk and increased over time is sufficient to survive summary judgment. *See Hayes v. Snyder*, 546 F.3d 516, 522–23 (7th Cir. 2008).

As for the subjective prong, Heard first contends that he has presented evidence that Dr. Tilden knew he should have tested for a hernia yet failed to do so for over a year. *Petties*, 836 F.3d at 728–29; *Ortiz v. Webster*, 655 F.3d 731, 735 (7th Cir. 2011). A plaintiff can show that a doctor acted with deliberate indifference if his treatment decision was "such a substantial departure from accepted professional judgment, practice or standards … that the person responsible did not base the decision on such a judgment." *Petties*, 836 F.3d at 729 (quoting *Cole v. Fromm*, 94 F.3d 254, 261–62 (7th Cir. 1996)). In other words, a plaintiff establishes deliberate indifference by showing that "no minimally competent professional would have so responded under those circumstances." *Collignon v. Milwaukee Cty.*, 163 F.3d 982, 989 (7th Cir. 1998).

No reasonable jury could conclude that Dr. Tilden acted with deliberate indifference to Heard's hernia. Before diagnosing the hernia in October 2012, Dr. Tilden examined Heard twice, diagnosed and monitored his hydrocele, and responded to Heard's complaints of pain by prescribing painkillers. Heard's decision to refuse those painkillers cannot be held against Dr. Tilden. And after Dr. Tilden did diagnose the hernia, he immediately referred Heard for an ultrasound and surgical consult. Even

assuming Heard had a hernia before October 2012, nothing in the record permits an inference that Dr. Tilden's failure to perform the cough impulse test resulted from anything more than negligence. Under the circumstances, the most Heard could prove is that Dr. Tilden's missed diagnosis amounted to malpractice, which is not a constitutional violation. *Cesal v. Moats*, 851 F.3d 714, 724 (7th Cir. 2017). Finally, not all reducible hernias require surgery. *See Johnson v. Doughty*, 433 F.3d 1001, 1014 (7th Cir. 2006). Indeed, the physician's assistant who first diagnosed the hernia decided that conservative treatment was appropriate. And Heard has no other evidence to support his theory that he needed, and would have been authorized for, immediate surgery in April or December 2011 if Dr. Tilden had diagnosed the hernia then. *See id*.

Nor has Heard met his burden with respect to his claims against Dr. Shicker for failing to intervene. Heard needed to offer evidence that Dr. Shicker had "reason to doubt" that Dr. Tilden and the physician's assistant based their course of treatment on something "other than medical judgment." *Rasho v. Elyea*, 856 F.3d 469, 474, 478–79 (7th Cir. 2017). And the record here suggests that in his first request, Heard asked Dr. Shicker to approve his surgery based only on Heard's own "opinion" that he had a hernia. A mere difference in opinion with Dr. Tilden's treatment plan would not have warranted intervention. *See Petties*, 836 F.3d at 729. True, Heard stated in his second letter that Dr. Tilden failed to perform the cough impulse test. But at that point, any failure by Dr. Tilden to diagnose the hernia was irrelevant to Dr. Shicker's assessment. Dr. Shicker credited the physician's assistant's hernia diagnosis but concluded that surgery was not yet required, consistent with the prison health-care unit's response to Heard's grievance. *See Rasho*, 856 F.3d at 474, 478–79 (medical director may rely on judgment of "medical professionals treating an inmate"). We cannot say that Dr. Shicker "failed to intervene with a deliberate or reckless disregard" for Heard's Eighth Amendment rights. *Fillmore v. Page*, 358 F.3d 496, 506 (7th Cir. 2004).

Heard next argues that Wexford and Dr. Shicker perpetuated a blanket policy of denying non-emergency hernia surgery that played a role in needlessly prolonging his pain. But a reasonable jury could not conclude from the record that such a policy existed. *Monell*, 436 U.S. at 694–95; *McCann v. Ogle Cty.*, 909 F.3d 881, 888 (7th Cir. 2018). Though Dr. Shicker stated that "[e]lective surgery, in general, is not undertaken within IDOC," he also told Heard that surgery would "be authorized" if his physician believed it was necessary. And indeed, Dr. Tilden ultimately authorized non-emergency hernia surgery after he and the outside doctor finally diagnosed Heard's hernia.

Last, Heard challenges the district court's denial of his request to transfer venue to the Northern District of Illinois. *See* 28 U.S.C. § 1404(b). The district court did not abuse its discretion in concluding that the Central District of Illinois was available, adequate, and more convenient for witnesses. *Id.* § 1404(a); *Deb v. SIRVA, Inc.*, 832 F.3d 800, 806–07 (7th Cir. 2016).

AFFIRMED