> **NONPRECEDENTIAL DISPOSITION**
> To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 24, 2021[*]
Decided May 27, 2021

**Before**

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

THOMAS L. KIRSCH II, *Circuit Judge*

No. 20-2688

| | |
|---|---|
| EUGENE L. CHERRY,<br>*Plaintiff-Appellant*, | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 1:18-cv-01602-WCG |
| MARY ALSTEEN, et al.,<br>*Defendants-Appellees*. | William C. Griesbach,<br>*Judge*. |

**O R D E R**

Eugene Cherry, a Wisconsin prisoner, sued prison guards and medical providers for allegedly violating his Eighth Amendment rights after a hernia surgery because he was prescribed a pain reliever for only three days, and he missed a dose. The district court entered summary judgment for the defendants. No reasonable jury could find that the defendants displayed deliberate indifference to Cherry's pain, and so we affirm.

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

In August 2018, Cherry had laparoscopic surgery to repair a testicular hernia. The surgery involved three small incisions. The surgeon told him that he would likely be in pain for seven days but did not prescribe any pain medicine. Back at the Green Bay Correctional Institution, Dr. Cynthia Koren prescribed hydrocodone-acetaminophen, a narcotic pain reliever (generic for Vicodin) to be taken as needed up to four times per day, for three days. Per prison policy Cherry's medicine would be delivered to his housing unit each day at 6:00 a.m., 11:00 a.m., 3:30 p.m., and 8:45 p.m.

The day after his surgery, Cherry missed his 3:30 p.m. dose of pain medicine. Hydrocodone is a staff-controlled medication that inmates cannot keep in their cells; they must come out of their cells at the scheduled times to receive their pills from the delivery cart. Unit staff keep a list of inmates scheduled to receive medication and are supposed to open their cell doors at the appropriate time. But Cherry's door did not open that afternoon, and so he did not receive his medicine from Christina Serrano, the nurse who was distributing medication. Because Cherry's prescription was "as needed," she assumed his absence meant he did not need the medication.

Cherry spoke to Officer Andrew Terrell from his cell shortly after the 3:30 medication pass, telling him that he was in pain and needed his medicine. Terrell responded rudely, saying something like, "you get no meds now." Cherry believed that Terrell, who was regularly assigned to Cherry's housing unit, assumed that he was lying because he was not normally on the list for medicine. About 45 minutes later, Cherry again told Terrell that he was in "extreme pain" and needed his medicine. Terrell responded in a "snotty" tone that the nurse had left the unit, and he had no medications available. According to Terrell, who admittedly had a hazy memory of the events, he informed health services that Cherry was requesting medication and was told it was not currently available.

Cherry also asked Sergeant Phil Przybylinski about his medicine: Three times between 5:30 and 7:00 p.m., as he was walking to and from dinner and the showers, Cherry told Przybylinski that he was in "extreme pain" and asked him to call the health services unit. Przybylinski said he would, but he later told Cherry that he had not called because he was "dealing with other things." After their last exchange, Przybylinski yelled at Cherry to return to his cell. (Przybylinski did not remember their interactions.)

Cherry was in "excruciating pain" for the five and a half hours between his missed afternoon dose and his 9:00 p.m. dose, which he received without incident.

Cherry had a full bottle of Tylenol, issued before his surgery for back pain, in his cell. He did not take any after the missed dose of hydrocodone because he believed it was for his back and was not appropriate for his post-surgery pain.

Over the next week, Cherry filed an inmate complaint and two health services requests about the missed dose and about the expiration of his prescription after just three days despite ongoing pain. Jean Lutsey, a nurse and the manager of the health services unit, told a complaint examiner that Cherry's prescription was reasonable for the type of surgery he had. Mary Alsteen, another nurse, responded to a health services request by explaining that Dr. Koren had prescribed only three days of hydrocodone, but Cherry could take Tylenol and would be seen by a nurse at sick call the next day.

Dr. Koren saw Cherry at two follow-up appointments about two weeks after his surgery and, despite his requests and reports of continued pain, she declined to prescribe more hydrocodone. Dr. Koren examined Cherry and determined that extending the prescription was not necessary—his incision sites were healing well, his groin was not tender, he reported only moderate pain, and he was walking normally. Concerned about the addictive nature of hydrocodone and its potential side effect of constipation (which a nurse in the surgeon's office said Cherry must avoid), Dr. Koren concluded that Tylenol, a scrotal support, and ice were appropriate treatments. Cherry's pain subsided within another week or so.

Cherry sued Dr. Koren, health services manager Lutsey,[1] nurses Alsteen and Serrano, and correctional officers Terrell and Przybylinski, alleging that they violated his Eighth Amendment rights by denying him adequate medical treatment for his post-surgery pain. *See* 42 U.S.C. § 1983. He cited the responses to his health services requests, the short prescription, and the missed dose of hydrocodone, which left him in "excruciating pain" for several hours.

Eventually, Cherry and all defendants moved for summary judgment, and the district court granted the defendants' motions. The court reasoned that Dr. Koren had acted within her medical judgment and that Lutsey and Alsteen permissibly relied on it. Further, Cherry lacked evidence that it was Serrano's responsibility to take any action when Cherry did not show up to take an "as needed" medication. As for Terrell and Przybylinski, the court concluded that no reasonable jury could find that they were

---

[1] Lutsey recently passed away, and Cherry proceeds against her estate represented by Karen Deshler. *See* FED. R. APP. P. 43(a)(1).

deliberately indifferent because Cherry did not exhibit any outward signs of a medical emergency requiring them to "drop everything" to respond. Moreover, the delay caused by the missed dose of medicine was not any longer than Cherry had to go between doses each night, and he could have used the Tylenol in his cell to lessen his pain.

On appeal, Cherry generally challenges the entry of summary judgment for the defendants on his deliberate indifference claims. Cherry needed evidence that he had an objectively serious medical condition and that the defendants were aware of and disregarded an excessive risk to his health. *See Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994). We agree with the district court that Cherry's "extreme pain" after surgery was serious, so we focus on whether the defendants acted with a "sufficiently culpable state of mind." *See Lewis v. McLean*, 864 F.3d 556, 563 (7th Cir. 2017) (quotation omitted).

Cherry's belief that Dr. Koren should have extended his hydrocodone prescription does not raise a question of fact about her state of mind because the record shows that she applied her medical judgment. "[M]ere disagreement with a doctor's medical judgment" cannot establish an Eighth Amendment violation. *Cesal v. Moats*, 851 F.3d 714, 722 (7th Cir. 2017). Dr. Koren explained the decision not to extend the hydrocodone prescription, and Cherry failed to introduce evidence showing that "no minimally competent professional" would have prescribed hydrocodone for just three days after a minor laparoscopic surgery. *Lockett v. Bonson*, 937 F.3d 1016, 1023 (7th Cir. 2019). Although Dr. Koren did not reassess Cherry until two weeks after surgery, there is no evidence that she was aware of his complaints before then; in fact, Cherry faults Lutsey and Alsteen for not consulting her. When Dr. Koren did learn that Cherry was still reporting moderate pain, she responded by examining him, finding he was healing and walking normally and determining that Tylenol, ice, and a scrotal support were appropriate treatments for his pain, particularly given hydrocodone's potential side effects. All of this is consistent with the application of medical judgment, not deliberate indifference.

Because no reasonable jury could find that Dr. Koren showed deliberate indifference, Cherry's claims against Lutsey and Alsteen also fail. Their only involvement was responding to Cherry's written complaints. They were entitled to rely on Dr. Koren's prescription for a three-day course of hydrocodone unless they had reason to believe that this treatment decision was not based on Dr. Koren's medical judgment, and Cherry lacks evidence of such a reason. *See Rasho v. Elyea*, 856 F.3d 469, 478–79 (7th Cir. 2017). And although Cherry asserts that Lutsey "ignored" his

complaint, prison records show that she responded within a day, though not with the answer Cherry wanted. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) (assertion that is "blatantly contradicted by the record" should not be credited at summary judgment).

Cherry's claims against Serrano, Terrell, and Przybylinski about the missed hydrocodone dose fare no better. A single missed dose of medication resulting in "hours of needless suffering" may support an Eighth Amendment claim if the defendants deliberately or recklessly delayed providing it. *Gil v. Reed*, 381 F.3d 649, 660–62 (7th Cir. 2004). Here, however, the record, construed in Cherry's favor, lacks evidence from which a jury could conclude that Serrano, Terrell, or Przybylinski acted with the requisite ill intent.

First, Serrano, when she was delivering medicine to the housing unit, was not obligated to go cell-to-cell inquiring why any inmate did not pick up "as needed" medication. Even if there were such a duty, as Cherry asserts without evidence, there is nothing to suggest that not following up was anything beyond negligence, which does not violate the Constitution. *See Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (en banc).

The same goes for Cherry's allegations about Terrell: Terrell did not know why Cherry was not let out of his cell at the appointed time, and Cherry has no evidence that it was anything but a mistake. In Cherry's own telling, Terrell ignored him because he incorrectly believed Cherry was not scheduled to receive medication. As for the claim that neither Terrell nor Przybylinski obtained hydrocodone for him after he missed the delivery, Cherry was not exhibiting signs of a medical emergency (he was walking and conversing normally), and only a few hours remained until the next dose. This is far from ignoring a prisoner's reports of severe back pain for 90 minutes, while the prisoner was incapacitated and sobbing. *Cf. Lewis*, 864 F.3d at 563–64. The remarks to which Cherry took offense—Terrell's comment that the nurse had left the unit and Przybylinski's that he had been too busy to call health services—do not suggest that they were mocking him or otherwise disregarding his pain, but merely that they were updating him with relevant factual information. Without some evidence of a culpable state of mind, the delay alone does not create a question of fact about deliberate indifference. *See Burton v. Downey*, 805 F.3d 776, 785 (7th Cir. 2015) (holding two-day delay in dispensing pain medication without evidence of bad intent was not deliberate indifference).

Moreover, Cherry did not provide evidence that the inaction of Serrano, Terrell, or Przybylinski caused his injury (the extra hours of pain). *See Thomas v. Martija*, 991 F.3d 763, 770–71 (7th Cir. 2021). In cases based on delays in treatment, the plaintiff must introduce medical evidence that the delay caused some harm such as "unnecessarily prolong[ing] pain." *Id.* at 771 (quotation omitted); *see Williams v. Liefer*, 491 F.3d 710, 714–15 (7th Cir. 2007). Cherry has not refuted the evidence that he could have taken Tylenol until his next dose of hydrocodone. His mistaken belief that Tylenol would not be appropriate for his post-surgery pain is not Serrano's, Terrell's, or Przybylinski's fault. Furthermore, Cherry confirmed that no medical professional told him that Tylenol was inappropriate, and Dr. Koren stated that Tylenol can be used for such pain.

AFFIRMED